509 So.2d 455 (1987)
Thomas J. GUILLORY, Highland Insurance Company (Intervenor), Plaintiff-Appellant,
v.
Bill DUCOTE d/b/a Alfred Lee Ducote, Archer Construction Company, Inc., General Accident Insurance Company of America, Paul Gobert, Carrol Gobert, Peter Dennis Gobert, d/b/a Gobert Brothers Construction Company, PPG & C Construction Company and Union Indemnity Company of New York, Defendants-Appellees.
No. 86-405.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Writ Denied June 5, 1987.
*456 Victor J. Versagi, and Philip A. Fontenot, of Davidson, Meaux, Sonnier & McElligott, Lafayette, for plaintiffs-appellants.
Christopher R. Philipp, of Preis, Kraft, Laborde & Daigle, P.L.C., Lafayette, Robert B. Acomb, III, and James Hanemann, of Hannemann and Assoc., New Orleans, Alfred Lee Ducote, a/k/a Bill Ducot, Baton Rouge, Alfred Octave Pavy, Opelousas, for defendants-appellees.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge, Retired, Pro Tem.
The issue presented by this appeal is whether the trial court erred in granting summary judgment holding that the defendant general contractor was plaintiff's statutory employer, and thus immune from plaintiff's tort suit.
During the years 1983 through 1985 Archer Construction Company, Inc. (hereinafter referred to as Archer) was the general construction contractor on a project to build a 400 unit two story condominium complex in Lafayette, Louisiana (hereinafter The French Colony Project). Archer subcontracted out labor on the French Colony Project to various subcontractors, including several who were doing carpentry work. One of the subcontractors was a partnership between three brothers, Peter, Paul and Carrol Gobert, which operated under the trade name of PPG & C Construction Company (hereinafter PPG & C). PPG & C was later incorporated, forming PPG & C Construction Company, Inc.
The verbal agreement between Archer and PPG & C was that PPG & C would perform carpentry frame-up work on The French Colony Project, which work included construction of the walls of the apartment buildings, "blacking" in and siding the walls, building a plywood underlayer for the roofs, framing the windows and building the soffets, all according to Archer's instructions. Archer was to provide all building materials and the scaffolding on which the workers were to stand while working, and PPG & C was to provide manpower, work tools and liability and worker's compensation insurance. The contract price to be paid PPG & C was based on a dollar amount per square foot of building constructed. After an agreement was reached between Archer and PPG & C, PPG & C hired its own carpenters and carpenter helpers and commenced work on The French Colony Project. PPG & C hired plaintiff as a carpenter's helper.
On October 20, 1983, plaintiff was working on scaffolding at the second story level of one of the apartment buildings constructing eaves underneath the roof top when he fell from the scaffolding, breaking his right ankle. Plaintiff filed suit in tort *457 against Archer and its supervisor on The French Colony Project, Bill Ducote, PPG & C (through its individual partners) and PPG & C Construction Company, Inc. for the negligence of Archer and PPG & C which resulted in plaintiff's injuries. The basis of plaintiff's suit was that Archer and PPG & C had permitted and instructed plaintiff and his co-workers to use substandard scaffolding and had failed to provide plaintiff with safe and adequate scaffolding which would have prevented plaintiff's accident. Plaintiff later amended his petition to add an additional defendant, General Accident Insurance Company of America, the general liability insurer of PPG & C. Highland Insurance Company, PPG & C's worker's compensation insurer, intervened in plaintiff's tort suit claiming subrogation rights for payments made to plaintiff as a result of the accident.
Archer filed a motion for summary judgment, attaching an affidavit by John E. Archer, the President of Archer. Plaintiff, Thomas J. Guillory, and intervenor, Highland, each filed briefs opposing the summary judgment. Plaintiff and intervenor attached as exhibits in support of their opposition to summary judgment copies of the depositions of Peter and Carrol Gobert, two of the three partners of PPG & C, and the deposition of Bill Ducote, The French Colony Project supervisor for Archer.
Following the hearing on the motion, the trial judge rendered judgment on January 23, 1986, with assigned written reasons, dismissing plaintiff's demands against Archer, Archer's employee, Ducote, and Archer's general liability insurer, General Accident Insurance Company of America. The trial judge granted the summary judgment based on findings that PPG & C was engaged in the trade, business or occupation of Archer at the time of the accident; that Archer, as such, was the statutory employer of the plaintiff, and that since worker's compensation is plaintiff's exclusive remedy against Archer, plaintiff's suit in tort against Archer could not be maintained. From this judgment, plaintiff and intervenor appeal.

ARCHER'S ENTITLEMENT TO TORT IMMUNITY
La.R.S. 23:1061 provides that "principals" or primary contractors shall be liable for payment of worker's compensation to employees of their subcontractors where the primary contractor undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal. LSA-R.S. 23:1061. The enactment of this statute imposes liability for worker's compensation on the part of a principal contractor for employees of their subcontractors and prevents principal contractors from interposing intermediary employers in order to avoid compensation responsibility. Lewis v. Exxon Corp., 441 So.2d 192 (La.1983), appeal after remand, 451 So.2d 24 (La.App. 1 Cir.1984). However, the statute, when combined with the exclusive remedy provisions of La.R.S. 23:1032 has a dual effect of limiting the remedy of an employee of a subcontractor against the principal contractor of the subcontractor to the provisions of Louisiana's worker's compensation laws.[1]
Several recent court of appeal decisions dealing with the statutory employer defense hold, under a disjunctive reading of the two definitions of principal in LSA-R.S. *458 23:1032 and 1061, that a principal is liable for worker's compensation if he contracts with another party to perform all or part of the principal contract, regardless of whether it is a part of the principal's trade business or occupation. This has been referred to as the "two contract" statutory employer defense in tort actions. LSA-R.S. 23:1032 and 1061; Borne v. Ebasco Services, Inc., 482 So.2d 40 (La.App. 5 Cir.1986), writ den., 486 So.2d 755 (La.1986); Jurls v. Lama Drilling Co. Inc., 457 So.2d 135 (La.App. 2 Cir.1984), writ den., 460 So.2d 1045 (La.1984); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1 Cir. 1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4 Cir.1984), writ den., 459 So.2d 535 (La.1984); Richard v. Weill Const. Co., Inc., 446 So.2d 943 (La.App. 3 Cir.1984), writ den., 449 So.2d 1356 (La.1984); Barnhill v. American Well Service & Salvage, 432 So.2d 917 (La.App. 3 Cir.1983).
Under this disjunctive reading of the definitions of principal as found in LSA-R.S. 23:1032 and 1061, it is unnecessary to determine whether PPG & C was engaged in Archer's trade, business or occupation. Archer was plaintiff's statutory employer if it contracted to build The French Colony Project and then subcontracted with PPG & C, who executed work which Archer had contracted to perform.
Since the holding in Archer's favor was by summary judgment, there must be no genuine issue of material fact, the materials before the court must be viewed in the light most favorable to the parties opposing the motion (plaintiff and intervenor), and the mover (Archer) must be entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981).
The documents which may be considered in deciding the motion for summary judgment show indisputably that Archer was the general contractor on The French Colony Project. In support of its motion for summary judgment, Archer filed the affidavit of John E. Archer, the president of Archer Construction, which stated that Archer was employed by the owners of The French Colony Project as the general contractor for the project. The fact that Archer was the general contractor for The French Colony Project was also brought out during Archer's argument at the hearing on the motion for summary judgment and has not been contested by either the plaintiff or intervenor.
It is also undisputed that Archer hired PPG & C for carpentry work on The French Colony Project, specifically, to do the framing on certain buildings. Although plaintiff contends the contents of the verbal agreement between Archer and PPG & C are in dispute, he alleges in his petition the existence of the contract between Archer and PPG & C for purposes of constructing condominiums. The depositions of Peter and Carrol Gobert and Bill Ducote clearly reveal that the essence of the agreement between Archer and PPG & C was that PPG & C was to perform general carpentry work, framing, on The French Colony Project, in exchange for which PPG & C was to be paid according to square feet of work completed.
The work which PPG & C contracted with Archer to perform, such work consisting primarily of framing buildings in The French Colony Project, clearly constitutes part of the work which Archer had contracted with the owners of The French Colony Project to perform. Plaintiff was injured while working for PPG & C as a carpenter's helper on The French Colony Project. Thus, the undisputed facts show that the owner contracted with Archer to be the general contractor, and Archer subcontracted a portion of the carpenter work to PPG & C, and plaintiff was performing this carpenter work at the time of his injury. Therefore, under the above authorities, Archer was plaintiff's statutory employer. Plaintiff's remedy against Archer is limited to worker's compensation, and plaintiff's tort action against Archer cannot be maintained.
Plaintiff and intervenor argue the recent Louisiana Supreme Court decision in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986) casts doubt on the "two-contract" statutory employer defense. In that *459 case, Sohio Petroleum Company owned a lease well. It contracted with Holston Well Services, Inc. to work over the well. During the workover operation it became necessary to perforate the well at a certain depth. Sohio contracted with CRC, plaintiff's immediate employer, to do the perforation. Plaintiff was a member of the wire line crew perforating the well at the time he was injured by falling pipe. He sued Sohio in tort, alleging the pipe was unsafely stacked. The trial court granted Sohio's motion for summary judgment that it was plaintiff's statutory employer and thus immune from tort. The intermediate court affirmed, 479 So.2d 944 (La.App. 3 Cir. 1986).
The Louisiana Supreme Court reversed, holding essentially that the wire line perforation work was highly specialized, not customarily performed by oil companies with their own employees, and therefore was "specialized per se", and not a part of Sohio's trade, business or occupation.
In Berry, supra, the Supreme Court took occasion to state guidelines for deciding whether the work being performed was part of the trade, business or occupation of the principal, within the meaning of La.R.S. 23:1032 and 1061. However, the court expressly stated that its opinion does not deal with the so-called "two-contract" defense. Footnote 3, page 936 reads as follows:
"3. The discussion throughout the remainder of this opinion does not deal with what may be called the "two-contract" statutory employer defense. La. R.S. 23:1032, 1061. In that situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade, business, or occupation of the "general." See Lewis, supra (in dicta); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La. App. 5th Cir.1986); Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La. App. 5th Cir.1985); Brown v. Ebasco Services, Inc., 461 So.2d 443 (La.App. 5th Cir.1984), writ denied in part 462 So.2d 1235 (La.1985); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1st Cir.1984); Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir.), writ denied 460 So.2d 1045 (La.1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir.), writ denied 459 So.2d 535 (La.1984); Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La.App. 3d Cir.), writ denied 449 So.2d 1356 (La.1984)."
The "two-contract" situation stated in footnote 3 is identical to the one in the present case, where we have an owner who contracts with a general contractor, who in turn contracts with a subcontractor to do part of the job contracted by the general contractor. Thus, Berry is not controlling in the present case. The applicable jurisprudential rule is that discussed above, which has been followed by all five of the intermediate courts in their decisions, as to several of which our Supreme Court denied writs. See the cases cited in footnote 3 quoted above.
In the recent case of Miller v. Atlantic Richfield Co., 499 So.2d 1095 (La.App. 3 Cir.1986), this court followed Berry in holding that oilfield welding was specialized per se. The facts were that Arco owned the rig and contracted with Power Rig to drill and work the well, which Arco decided to plug and abandon. This required that the wellhead be cut from the casing by welders. Neither Arco nor Power Rig employed their own welders, so they contracted with Oil Patch Welders to do the welding. Plaintiff, an employee of Oil Patch, was injured while cutting off the wellhead. He sued Arco in tort. The court applied Berry and held as follows:
"Welding requires training and experience and equipment generally not possessed by persons outside the welding field. The Millers owned and provided their own equipment. Arco contracted with Oil Patch to perform the cutting necessary on a "plug and abandon" operation. Arco did not employ any welders and had always contracted out that type of work. Arco's representative testified *460 that it contracted with persons such as Layton Miller because Miller knew how to cut a proper line. It is clear from the evidence that Arco did not have the employees or equipment capable of performing the necessary welding.
Considering the facts as proved in the present case, this is a "specialty" case. Welding is a specialized occupation requiring a degree of training, experience, skill and equipment not normally found outside the welding field. For these reasons the contract work in the present case was not a part of Arco's trade, business or occupation."
Miller v. Atlantic Richfield Co., 499 So.2d at 1098.
We distinguish Miller from the present case on the basis that carpentry is not highly specialized work requiring training and experience not generally possessed by persons outside the field. Mr. Archer's affidavit is uncontradicted that carpentry work is an integral and routine part of the business of constructing buildings, and that Archer was capable of performing this work with their own personnel. Thus, under the facts of the present case, carpentry work was not specialized per se.
For the reasons assigned, the judgment appealed is affirmed. Costs of this appeal are cast against the plaintiff-appellant and intervenor-appellant.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] La.R.S. 23:1032 provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." (Emphasis added.)