SEXTON, Judge.
The defendants, Fidelity & Casualty Insurance Company of New York and Dr. Fred S. Willis, appeal the trial court judgment ordering them to pay worker’s compensation benefits to the plaintiff, Charles Grigg. We reverse.
This worker’s compensation claim arose out of an accident at the Pine Tree Ranch owned by Dr. Willis. The business conducted by the ranch is thoroughbred horse breeding. Dr. Willis contracted with Michael Hatfield to build a feed shed as an addition to an existing structure. Hatfield hired the plaintiff to help him with the job. The plaintiff was injured when he fell from the roof of the structure to the concrete floor 12 feet below and sustained serious injuries to his back. He brought a worker’s compensation suit against Hatfield, Dr. Willis and Dr. Willis’s insurer, Fidelity & Casualty Insurance Company. In addition to asking for compensation benefits, the plaintiff asked for medical expenses, costs, penalties, and attorney’s fees.
The trial court found that the plaintiff was a statutory employee of Dr. Willis because the construction of the addition was a necessary consequence of operating a thoroughbred horse breeding facility. The trial court held that all defendants were liable in solido for worker’s compensation benefits for total disability. The trial court also awarded penalties and attorney’s fees, plus interest, against Hatfield, but denied that request against Dr. Willis and Fidelity.
Dr. Willis and Fidelity have appealed contending that Dr. Willis is not the statutory employer of the plaintiff and thus does not owe worker’s compensation benefits.
Under certain circumstances, an employee of a contractor is considered to be an employee of the owner or principal. A principal, or statutory employer as he is commonly known, is obligated to pay worker’s compensation benefits to the contractor’s employees in the event that they are injured. Under LSA-R.S. 23:1061, a contractor’s employee “is deemed to be an employee of the principal when the contractor performs work for the principal in the principal’s trade, business or occupation.” Lewis v. Exxon Corporation, 441 So.2d 192, 197 (La.1983). LSA-R.S. 23:1032 defines a principal as “any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to per *623 form and contracts with any person for the execution thereof.”
In the present case, the contract between Dr. Willis and Hatfield provided that the new structure was to be 16 by 30 feet and was to be set on a 4-inch concrete slab. The structure was to have the following features: stud walls, sheetrock on the interior, baked enamel finished metal on the exterior, a galvanized steel roof, and two 4 by 6 foot 10-inch doors. The interior was to contain two feed bins with shelving between them. No plumbing or electrical work was required. The total cost of the project was $4,200.
The business that Dr. Willis conducted at the Pine Tree Ranch was the breeding and raising of thoroughbreds. Although the number of persons employed by the ranch has fluctuated over recent years, the ranch employs two to three people most of the time. The duties of these employees related solely to the care of the horses.
The record reveals that Dr. Willis did not normally use his regular employees to construct the various buildings on his ranch. He stated in his deposition that he contracted out the construction of the following buildings: the farm house, an equipment shed, a foaling barn with ten stalls, three metal feed bams, and three stalls similar in structure to pole barns.
His regular employees did build two well houses, but they had to be torn down because they were unstable. Johnny Ray Norman, the farm manager for Dr. Willis, testified that he built three sheds in the paddocks. Each shed consisted of four poles with a roof over it.
In addition, Dr. Willis’s employees built a stud pen onto the side of the structure completed by Hatfield. This addition measured 16 by 18 feet. It had a metal top supported by three poles; the structure had no sides. The materials used to construct the stud pen came from a shed that was tom down.
The ranch employees put up all of the chain link fences on the property and built a road. They also replaced rotten posts and repaired stalls. Some carpentry tools such as saws, hammers, squares and plumb bobs were kept in the tool shed.
Mr. Norman testified that he is capable of doing some carpentry work but that he doesn’t consider himself to be a “finish carpenter.” More specifically, he did not think he was capable of building the structure that Mr. Hatfield built. Mr. Norman testified that the Pine Tree Ranch did not have any employees who, as a regular part of their work, built structures or did carpentry work.
The plaintiff testified that he has done carpentry work for most of his life. At the time that he fell, he was putting the metal roofing in place.
In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the Louisiana Supreme Court set forth a three-step analysis for determining whether a statutory employment relationship exists:[1] (1) Is the contract work specialized or non-speeial-ized? (2) If the contract work is non-specialized, can it be considered a part of the principal’s trade, business or occupation when the two are compared? (3) If the contract work is part of the principal’s trade, business or occupation, was the principal engaged in that work at the time of the accident?
The first inquiry involves a consideration of whether the contract work requires a degree of skill, training, experience, education or equipment not normally possessed by those outside the contract field. If the contract work is specialized per se, then it is not part of the principal’s trade, business or occupation, and consideration of the next two steps in the analysis is pretermitted. If the work is not specialized, then the consideration of steps two and three is necessary.
The contract work in the present case was the construction of a 16 by 30 foot addition to a building. This work obviously •involved the use of carpentry skills. The *624 record lacks details concerning the level of expertise required to construct this particular structure.
On oral argument, the plaintiff cited Guillory v. Ducote, 509 So.2d 455 (La.App. 3rd Cir.1987), writ denied, 510 So.2d 376 (La.1987), for the proposition that carpentry is not specialized work. It is true that the Guillory court did state that “carpentry is not highly specialized work requiring training and experience not generally possessed by persons outside the field.” Guillory v. Ducote, supra, at 460. However, that statement must be read in the context of the facts of that case. The court specifically stated at the end of its opinion that “under the facts of the present case, carpentry work was not specialized per se.” Guillory v. Ducote, supra, at 460 (emphasis added).
In that case, a general construction contractor hired the plaintiff’s direct employer to do the carpentry work for a project. As noted by the court, “carpentry work is an integral and routine part of the business of constructing buildings” and this general contractor was capable of performing this work with its own personnel. Guillory v. Ducote, supra, at 460. Moreover, the finding of a statutory employment relationship in Guillory was a foregone conclusion. The case involved what can be referred to as the “two-contract” statutory employer situation, which is a situation in which a contractor on a project subcontracts part or all the work, and a subcontractor’s employee is injured while working on the project. In that situation, the work of the subcontractor is automatically considered to be within the contractor’s trade, business or occupation.[2]
As the present case does not involve a two-contract situation, there can be no automatic finding that the work of the injured person’s employer is part of the principal’s trade, business or occupation. In the present case, we are required to compare carpentry work with the business of running a thoroughbred breeding farm. Under the facts of the present case, carpentry work might be considered specialized work requiring training and experience not generally possessed by persons outside the field. We pretermit the difficult analysis of determining the specialized nature of carpentry work as it applies to the instant project for two reasons. First, the record is sketchy on the subject and, more importantly, a Berry step two analysis is clearly fatal to the plaintiff's position.
Step two of the Berry analysis requires a comparison of the principal’s business, Dr. Willis’s thoroughbred breeding farm, to the contract work involved on that farm. In other words, is the construction work part of Dr. Willis’s business of operating a thoroughbred breeding farm? As Berry points out, this analysis is not to be done on an absolute or rigid basis but should be applied relatively considering the size and complexity of the business at issue.
In making the comparison required by Berry, there are three non-exclusive guidelines. The first is whether the contract work is routine and customary to the principal. The second is whether the principal has the equipment and/or manpower to perform the contract work. The third is whether it is the industry practice. Berry, supra.
Whether the contract work is routine or customary involves a determination of whether the work includes extraordinary or non-recurring constructions or repairs; however, general maintenance and repair work are part of the principal’s business since they allow the smooth and continued operation of the principal.
Secondly, in deciding whether the principal has the manpower and equipment capable of performing the contract work “the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees.” Berry, supra, at 938. Finally, the court should also examine whether others in the *625 principal’s industry normally contract out this type of work or have their own employees perform the work. The entire scope of the work contract and not just the specific task to which the injured employee is assigned is to be considered. Lewis, supra.
The facts of Lewis are analogous to the present situation. In Lewis, Exxon contracted with the plaintiffs employer to convert an existing Exxon chemical plant from the manufacture of ethanol to the production of isopropanol. The conversion process involved installing a device called an “orifice run.” The plaintiff was injured during this installation. He sued Exxon for damages. The Supreme Court stated that Exxon was in the business of refining petroleum and producing chemical products. Many of its employees were able to perform general maintenance and construction work. Some of its employees had in fact done construction work at this particular plant when a fire destroyed part of the plant, and Exxon employees reconstructed this portion of the plant. The court found, however, that it was the policy of Exxon to contract out major construction projects such as the one on which the plaintiff was working. The court also found that Exxon could not have completed the conversion process and at the same time maintained the normal operation of the plant with its regular employees. As a result, the court found that Exxon was not engaged in the trade, business or occupation of plant reconstruction.
Similarly, in the present case, Dr. Willis was in the business of breeding horses. While his employees did construct a few very simple structures on the ranch, he usually contracted out the construction of more complicated structures such as the equipment shed and the foaling barn. The feed shed which Hatfield was constructing at the time of the plaintiffs accident is one of these more complicated structures. Unlike the structures which the ranch employees, built consisting only of poles supporting a roof, this feed shed had walls and doors and was built on a concrete slab. Because the ranch had only a few employees, the normal operation of the ranch would have been disrupted if the regular employees had to build the feed shed.
We thus determine the construction of the instant structure is neither routine nor customary to the horsebreeding business. The structure is an addition to the physical structure of the horsebreeding operation. It is permanent in nature in the sense that it is obviously intended to last as long as the rest of the physical plant, in contrast to the pole sheds and well sheds which can only have been expected to last a few years. Moreover, it seems apparent that Dr. Willis did not have the manpower to build such a complicated structure. The interior was sheetrocked, the exterior was of a finished material and the entire structure was erected on a slab.
Based on the foregoing factors, we conclude that Dr. Willis is not the statutory employer of this unfortunate plaintiff. Just as this, determination allows us to pretermit the question of the specialized nature of carpentry work, it likewise allows us to pretermit step three of the Berry inquiry.
The plaintiff has cited Cantrell v. BASF Wyandotte, 506 So.2d 793 (La.App. 1st Cir.1987), writ denied, 512 So.2d 1178 (La.1987). This case is inapposite. In this case, the defendant subcontracted security guard work during which the plaintiff was injured. Cantrell simply holds that security work was incidental to the work at that plant. Moreover, similar work was also performed by the defendant’s regular employees. The job of security guard is easily distinguishable from the job of doing carpentry work on an addition to the physical plant of a horse breeding farm.
For the reasons aforesaid, the judgment of the district court is reversed and there is judgment herein rejecting the demands of the plaintiff, Charles Grigg, against the defendants, Dr. Fred S. Willis and Fidelity & Casualty Insurance Company, at plaintiff-appellee’s cost.
REVERSED AND RENDERED.

. Although Berry was a tort suit in which the defendant asserted the statutory employment relationship as a defense, the Berry analysis is applicable in a worker’s compensation suit. See Demery v. Dupree, 511 So.2d 1268 (La.App. 2d Cir.1987), writ denied, 514 So.2d 456 (La.1987).

. Footnote three of Berry v. Holston Well Service, Inc., supra, at 936, details the appellate decisions so holding.