355 So.2d 12 (1977)
Donald Roy STELLY
v.
WAGGONER ESTATES et al.
No. 11655.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Writ Refused March 31, 1978.
*13 Anthony J. Fazzio, Eunice, for plaintiff and appellee.
Michael Harson, Lafayette, for intervenor.
Wood Brown, III, New Orleans, for defendants and appellant.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
This is a suit for damages for personal injuries, and, alternatively, for workmen's compensation benefits, brought by Donald Roy Stelly. Defendants are Killen Moore, as Trustee of the W. T. Waggoner Estate, Ralph Thornhill, North River Insurance Company and United States Fire Insurance Company. T. & H. Well Service and The Home Insurance Company, plaintiff's employer and its workmen's compensation insurer, intervened to collect all or a pro rata share of compensation benefits paid to plaintiff.
After trial on the merits, judgment was rendered in favor of plaintiff and against all defendants, in solido, for $75,000.00. Judgment was rendered on the intervention in favor of Home Insurance and against plaintiff for all amounts paid to plaintiff under the workmen's compensation statute. From this judgment all defendants have appealed. Neither plaintiff nor intervenors have appealed nor answered the appeal taken herein. Therefore, the sole question presented by this appeal is that of the liability of the defendants in tort.
W. T. Waggoner Estate was the owner and operator of the Darrow Field, which contains 20 oil wells. Waggoner employed Ralph Thornhill as a pumper at the field. As such he "tended to the wells". More specifically, he checked the various wells to see that things were going all right; checked the well pressures; and made reports. In addition, he would relay information from any oil well crews which might be working in the field to his immediate superior, Mr. C. D. Hawley. He did no purchasing or hiring and wrote no checks. He made no decisions as to what work was to be done on the wells. The only other employee in the field was a relief man who came on Sundays.
When it became necessary to work over a well, in order to keep it producing, a contractor would be hired to do the work. At the time of the accident in this case, T. & H. Well Service had been hired to work over one of the wells. Waggoner paid for the rig and crew at an hourly rate, and the crew was subject to the instructions of Mr. Hawley, who "engineered" the job. Plaintiff was a derrick hand for T. & H.
On the day of the accident, Mr. Thomas Picard, who was the driller in charge of the *14 T. & H. crew, told Mr. Thornhill that he needed a choke box to replace the one on the well being re-worked. Mr. Thornhill and Mr. Stelly went together to another well which had been abandoned, intending to remove the choke box from that well.
Mr. Thornhill testified that Mr. Picard told him to take Mr. Stelly with him. Mr. Picard denied this, but said that it was customary for one of the men to assist Mr. Thornhill if he had something to do that was too much for him. In any event, it is clear that procuring the choke box was necessary to the completion of the workover job being done by T. & H.
The well from which the choke box was to be obtained had been abandoned some time prior to the accident. At the well head there was an assemblage of valves known as the Christmas tree. The main, or master, valve serves to shut off the well completely. If that valve is open, flow from the well then proceeds through the wing valve to the choke box, and thence to the flow line. In addition, there is a small hand valve, known as the bleeder valve, which controls flow to a pressure gauge.
Mr. Thornhill testified that, at the time the well was abandoned, it was "dead completely dead", and there was no pressure. The master valve was shut off at that time, and both the wing valve and bleeder valve were closed. A pressure gauge, which had been on the Christmas tree, had been removed by Mr. Thornhill after the well was abandoned, about six months before the accident. Mr. Thornhill was of the opinion that there was no pressure in the Christmas tree.
When Mr. Thornhill and Mr. Stelly, both of whom were experienced oil field workers, arrived at the well to remove the choke box, Mr. Stelly asked if there was any pressure, and was told that there was not. He checked the master valve and the wing valve and found them to be closed. He tried to open the bleeder valve and found it to be frozen shut. After he had performed these operations, he testified, Mr. Stelly believed it to be safe to remove the choke box.
This operation is performed by removing the wing valve, which is taken off by striking it with a hammer. Mr. Stelly and Mr. Thornhill each took a turn in attempting to remove the valve in this manner, without success. Mr. Stelly then took a second turn, and, after he had struck the valve a few more times, it came loose. There was a sudden release of pressure, which was likened to an explosion, and which knocked Mr. Stelly to his knees. Debris and rust particles from within the valve were blown into his eyes, causing the injury for which this suit was brought.
Waggoner argues that it cannot be held liable in tort to the plaintiff, because it occupies the position of statutory employer to him, and can be liable only in workmen's compensation. R.S. 23:1061 provides:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him . . . ."
Plaintiff argues that the foregoing has no application in this case because there is no evidence of what the trade, business or occupation of Waggoner might be. It is true that there is no direct evidence of this fact, but the record does reflect that Waggoner is the owner and operator of the twenty well Darrow Field, and that its employees supervise and manage the field. We think these facts are sufficient to put Waggoner in the business of operating oil wells. Although this may not be the only business in which Waggoner is engaged, it is a business, and therefore covered by the act. An employer may have several trades, *15 businesses and occupations, and under the law, is liable in workmen's compensation to employees engaged in each of those occupations. Shipp v. Bordelon, 152 La. 795, 94 So. 399 (1922); Edwards v. Stafford, 153 So.2d 106 (La.App. 1st Cir. 1963).
It is clear from the testimony that the working over of oil wells, to insure continued production therefrom is a regular part of the business of operating oil wells. The trial judge's conclusion to the contrary is unsupported by either the evidence in this case or the applicable law.
We therefore find that plaintiff is the statutory employee of Waggoner, and his only recourse against Waggoner is under the workmen's compensation statute.
Under their policies, the two insurance companies made defendants herein can be found liable only if Mr. Thornhill is an executive officer of Waggoner. The trial judge found that he was an executive officer. We find this conclusion to be without basis in fact or law, and therefore manifestly erroneous. In Hadrick v. Diaz, 302 So.2d 345 (La.App. 1st Cir. 1974) we listed a number of criteria to be considered in determining if an employee occupies executive officer status. Without detailing these, we point out that Mr. Thornhill, who had neither authority nor discretion in carrying out his duties, meets none of those criteria. Neither North River nor U.S. Fire can be held as the liability insurers of Waggoner, which has no tort liability, nor of Mr. Thornhill, who is not covered by the policies.
Turning to the question of the negligence of Mr. Thornhill, we note that he had been working as a pumper in the Darrow Field for six years, and had been working around oil fields practically all of his life. He testified that he had never heard of pressure building up in an abandoned well with the master valve closed off. He did testify that "it could have been a little oil in there that the temperature pressure made gas out of."
Mr. Picard testified that it was fairly common for oil trapped in the wing valve and choke box of an abandoned well to evaporate into gas in six months to a year and cause pressure to build up.
Considering the foregoing testimony, we think it not unreasonable for the district judge to have concluded that Mr. Thornhill should have recognized the possibility of a pressure buildup and either warned Mr. Stelly or taken steps to bleed off the pressure. We find no manifest error in his conclusion that Mr. Thornhill was negligent.
Mr. Thornhill has advanced the defenses of contributory negligence and assumption of risk on the part of Mr. Stelly. The record shows that Mr. Stelly has worked in the oil fields for 16 years, most of that time as a roughneck and derrick hand. He was aware that pressure in the Christmas tree would create a dangerous situation, in removing the choke box. He personally checked the wing valve and the master valve and found them closed. He tried to open the bleeder valve, and found it frozen shut. He then concluded that there was no pressure in the Christmas tree. In addition, he inquired of Mr. Thornhill, who told him that the well was dead, and that there was no pressure. Mr. Stelly also testified that he was of the opinion that, if there was pressure in the well when the master valve was closed, there would be pressure in the christmas tree thereafter.
Mr. Thornhill argues that Mr. Stelly was in just as good a position as he was to evaluate the risk involved in removing the choke box under the circumstances outlined above. Mr. Stelly argues that he relied on Mr. Thornhill's assurance that there was no pressure in the christmas tree, and that Mr. Thornhill was in a better position than he to be aware of the danger involved.
The question presented is whether Mr. Stelly, who was aware of the possibility of there being pressure in the christmas tree, and of the danger presented thereby, was justified in accepting Mr. Thornhill's assurances that there was no pressure in the well. Under the circumstances here presented, we think not. Mr. Stelly testified *16 that he had already concluded that it was safe before he asked Mr. Thornhill about the pressure. He was in just as good a position as was Mr. Thornhill to recognize and appreciate the potential hazard presented by removing the choke box without first taking the precaution of opening the bleeder valve. In so doing, we think he assumed the risk of the injury which he suffered. He is therefore precluded from recovering damages from Mr. Thornhill in tort.
The judgment appealed from is therefore reversed and set aside, and there will be judgment herein in favor of defendants and against plaintiff, dismissing his demands, at his cost.
REVERSED AND RENDERED.