488 So.2d 934 (1986)
Lynn D. BERRY
v.
HOLSTON WELL SERVICE, INC., et al.
No. 86-C-0091.
Supreme Court of Louisiana.
May 20, 1986.
Rehearing Denied June 19, 1986.
Glenn W. Alexander, Jones, Jones & Alexander, Cameron, for plaintiff-applicant.
Thomas L. Raggio, Raggio, Cappel, Chozen & Berniard, Lake Charles, Kirk A. Bergeron, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for respondent.

FACTS
BLANCHE, Justice.
On June 23, 1977, the date of the alleged accident, Berry was employed as a hoistman for CRC Western Wireline Services, Inc. (hereinafter "CRC"). His petition alleges that he received serious injuries to his back and legs during workover operations on a lease well owned and operated by Sohio Natural Resources Company, formerly Sohio Petroleum Company (hereinafter *935 "Sohio"). Sohio had contracted with Holston Well Service, Inc. (hereinafter "Holston") to furnish the necessary rig, equipment and personnel for the drilling portion of the workover. While engaging in the operations it became evident that there would be a need to perforate the well at a certain depth. Sohio then contracted with CRC (plaintiff's immediate employer) to perform the necessary perforating work. CRC pursuant to the contract was to provide the necessary labor, tools, equipment and material. CRC sent a three-man wireline crew composed of Harvey M. Twiner, Johnny Landry and Berry to the well location. Berry was injured while in the course and scope of his employment with CRC.
Berry timely filed his tort suit alleging that the injuries he sustained were caused by the negligence of Holston and/or Sohio. The acts of negligence complained of consisted of improperly and unsafely stacking a large quantity of pipe in close proximity to the working area thus not allowing a reasonable amount of space for the CRC crew to perform its work. All of the defendants filed motions for summary judgment. Of import to this case is the motion filed by Sohio. In its motion, Sohio claims that it was plaintiff's statutory employer under La.R.S. 23:1061;[1] and therefore, Berry's exclusive remedy against it is for compensation. La.R.S. 23:1032.[2]
In support of its motion Sohio attached several depositions as well as supporting affidavits. From the attachments it is clear that CRC is a specialized support company performing wireline services which are undisputedly necessary for the operation of Sohio's trade, business or occupation (i.e. discovering, extracting and producing minerals from the ground). By the very nature of CRC's business, the wireline service that it performs requires a degree of skill, training, experience and equipment not generally found outside the field. In fact it is so specialized that it supports a host of independent wireline companies. Basically the process involves the attachment of certain special tools to an electrically charged cable and then lowering those tools down into the hole to perform the necessary tasks. Because of the nature of the work, Sohio has no employees of its own which do this type of work. Sohio has always contracted out this type of work to those entities with the skill and equipment to handle the job properly. In addition, most, if not all, oil companies with operations similar to Sohio contract out this work.
In its original appearance before our brothers of the Third Circuit Court of Appeal, that court affirmed the trial court's granting of Sohio's motion for summary judgment finding that Berry was Sohio's statutory employee. Berry v. Holston Well Service, Inc., 467 So.2d 90 (La.App. 3d Cir.1985). In their opinion, the cases of Lewis v. Exxon Corp., 441 So.2d 192 (La. 1983) and Benson v. Seagraves, 436 So.2d 525 (La.1983) were distinguished on the ground that those cases involved "new construction" and on that factual basis were not controlling. We granted writs intially in this case and rendered an order transferring *936 the case back to the court of appeal for reconsideration in light of our decision in Rowe v. Northwestern National Ins. Co., 471 So.2d 226 (La.1985). Berry v. Holston Well Service, Inc., 474 So.2d 1296 (La.1985).
In a second opinion, the court of appeal reaffirmed their earlier decision. Berry v. Holston Well Service, Inc., 479 So.2d 944 (La.App. 3d Cir.1985). The court likewise distinguished our decision in Rowe on the ground that Rowe involved routine maintenance activities in a plant, whereas here the wireline work was part of the complex, integrated, interdependent and interrelated operations required for the safe and efficient discovery, recovery and production of minerals. In essence the Third Circuit has created what might be called an "oilfield exception "to the principles of statutory employment. We again granted writs on application of the plaintiff to determine if, based on the facts of this case, Sohio is plaintiff's statutory employer. 481 So.2d 1341 (La.1986).
For the following reasons we reverse the judgments of the lower courts granting Sohio's motion for summary judgment. We hold that under the facts of this case and the principles announced herein Sohio was not Berry's statutory employer. Sohio and its insurer are therefore amenable to tort suit, and the case will be remanded to the trial court for further proceedings in accordance with law.

STATUTORY EMPLOYMENT DOCTRINE[3]
Pursuant to section 1061, employees of contractors are under certain circumstances considered to be the employees of the owner or principal. Lewis, supra. As originally enacted the purpose behind this fiction of the law was to prevent principals from evading their compensation responsibilities by interposing a "straw man" between them and those "employees" who are doing the whole or a part of their trade, business or occupation. Rowe, supra (Lemmon, J. concurring); Lewis, supra; 1C A. Larson, The Law of Workmen's Compensation, § 49.00 (1982); 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, § 121 (1980). Although its purpose was self-evident, beginning with the case of Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), this Court developed the doctrine of tort immunity for principals (i.e. statutory employers) vis-a-vis their contractor's employees (i.e. statutory employees).
This jurisprudential doctrine was later codified in 1976 when the legislature amended certain sections of the Act. See 1976 La.Acts, No. 147, § 1; Rowe, supra (Lemmon, J. concurring). Since the time of Thibodaux and through the present, most of the cases involving a claim by the injured employee against the principal were cases sounding in tort, and in most instances the employee had already received compensation from his immediate employer. Malone & Johnson, supra, § 126. In this context, courts have struggled to determine what is or is not a statutory employment relationship. The primary reason advanced for the difficulty was the fact that section 1061 was "being interpreted in a context for which it was never intended" (i.e. How should the question of a principal's *937 tort liability or immunity therefrom vis-a-vis an employee of a contractor be resolved?). Id. "The section [1061] makes no indication that this subject was intended to be resolved by its provisions, and until the jurisprudence established the principal's tort immunity, no one would have concluded that it should be so used." Id.
Initially, the courts of this state, including this Court, had determined that a contractor was performing a part of the principal's trade, business or occupation, and thus falling under the statute, when the contract work was an integral and/or essential part (or other synonyms) of the trade, business or occupation of the principal. See for example Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978); Thibodaux, supra; Melancon v. Tassin Amphibious Equip. Corp., 427 So.2d 932 (La.App. 4th Cir.), writ denied 433 So.2d 166 (La.1983); Klohn v. Louisiana Power & Light Co., 394 So.2d 636 (La.App. 1st Cir.1980), writ denied 399 So.2d 612 (La.1981); Stelly v. Waggoner Estates, 355 So.2d 12 (La.App. 1st Cir.1977), writ denied 356 So.2d 1011 (La.1978); Vizena v. Travelers Ins. Co., 238 So.2d 238 (La.App. 3d Cir.), writ denied 256 La. 885, 239 So.2d 542 (1970); Shird v. Maricle, 156 So.2d 476 (La.App. 3d Cir.1963); Mau v. Industrial Steel Products Co., Inc., 119 So.2d 654 (La.App. 2d Cir.1960); Stansbury v. Magnolia Petroleum Co., 91 So.2d 917 (La.App. 1st Cir. 1957). This almost limitless standard yielded inconsistent and often illogical results since almost everything could be said to be integrally related to the principal's trade, business or occupation. See Slocum v. Lamartiniere, 369 So.2d 201 (La.App. 3d Cir.), writ denied 372 So.2d 569 (La.1979) (New construction of a building was found to be within the trade, business or occupation of a grocery.); Foster v. Western Electric Co., Inc., 258 So.2d 153 (La.App. 2d Cir.1972) (Operating a cafeteria on the premises of a large industrial plant fell under the statute.).
Beginning with the case of Benson and followed by the cases of Lewis and Rowe, it is obvious that this Court has shifted its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine to one which is more restrictive. Rowe, supra (Lemmon, J. concurring). In so doing we have abandoned the "integral relation" test for a test that we feel is more in line with the purpose of sections 1032 and 1061. See Boudreaux v. Exxon Co., U.S.A., 441 So.2d 79 (La.App. 3d Cir.1983), writ granted and case remanded 445 So.2d 429 (La. 1984), on remand 451 So.2d 85 (La.App. 3d Cir.), writ denied 458 So.2d 119 (La.1984). The reason for the change was that the former test was being interpreted too expansively, see Malone & Johnson, supra, § 126, thus transforming a doctrine which was originally designed to provide secondary protection to an injured employee into one which grants immunity to principals regardless of whether they actually pay compensation. 1 A. Larson, Workmen's Compensation for Occupational Injuries and Death, § 49.11 (Desk ed. 1985). As a result, principals have been elevated to a more preferred position than an injured employee's immediate employer in that the quid pro quo existing between the employee and his immediate employer (i.e. compensation regardless of fault for tort immunity) does not exist between the employee and the principal. La.R.S. 23:1032; 1061; contra 33 U.S.C. § 901 et seq. (Under the Longshoremen's and Harbor Worker's Compensation Act, in order for a principal to claim tort immunity it must have paid compensation benefits to the injured employee.). Although the shift is very clear, we have failed to succinctly set forth the method of analysis presently used by this Court in resolving the difficult question of statutory employment.
From a reading of Benson and its progeny the following general rules or method of analysis can be gleaned. Basically, a determination of whether a statutory employment relationship exists involves a three level analysis. In the first level, the primary focus is on the scope of the contract work. "The specific task to which an individual employee is put should not be determinative of his coverage under *938 the Act. Instead, the entire scope of the work contract must be considered." Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees. In this situation, "the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play" because the contractor is an independent business enterprise, rather than a mere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, §§ 78, 126 (1980).
If it is determined that the contract work is non-specialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson, supra; Barnes, supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C. A. Larson, The Law of Workmen's Compensation, § 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir.1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, § 126, pp. 252-53, fn. 91.
These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry giant be regular. Similarly while the type of contract work may be non-specialized (i.e. manual labor), for a small concern it may well be beyond the expertise or capability of its employees. 1 A. Larson, Workmen's Compansation for Occupational Injuries and Death, § 49.13 (Desk ed. 1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of "whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors." Id. (emphasis added)
Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level "[i]t is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the *939 statute, he must be engaged in the enterprise at the time of the injury." Lewis, supra.
Armed with a full understanding of the reasoning process presently used by this Court in determining whether a statutory employment situation exists, our opinions are logically consistent.[4] Both Benson and Rowe are specialty cases. In Rowe, we held that while routine maintenance activities of the pump were part of the trade, business or occupation of Cargill, the disconnection and reconnection of the pump to high voltage electricity, certainly necessary for the routine maintenance to be performed, was not within the skill, training or expertise of Cargill employees. Thus it is clear that the work of the contract electrician was beyond the scope of the regular maintenance activities. Because of the dangerous and specialized nature of the high voltage disconnection and reconnection, Cargill was required to hire a specialty contractor. As the court of appeal appropriately pointed out, our holding that the employee of the specialty contractor was not the statutory employee of Cargill was no more than "a reinteration and rearticulation of the jurisprudential rule of law found in Louis (sic) v. Exxon, supra, and Benson v. Seagraves, supra." Berry, 479 So.2d at 946. Benson is similar. There the injured employee was engaged in electrical planning and design, certainly specialty areas, requiring a degree of training not normally found beyond the special field.
Lewis is a non-specialty case. The contract work in Lewis was construction. When we apply the factors, it is apparent that the magnitude of the contract work exceeded what could reasonably be classified as Exxon's trade, business or occupation. The construction was not routine and customary, but was the result of an emergency. Because of the magnitude of the project, Exxon's normal employees were not capable of handling the project. Lastly, while Exxon admitted that it had done this type of work previously, it was not engaged in this enterprise at the time of the injury.

DECISION ON THE MERITS
The plea of "statutory employer" under the provisions of section 1061 is an affirmative defense and the burden of proof is upon the party asserting ithere Sohio. Lewis, supra; Benson, supra; Duplechin v. Pittsburgh Plate Glass Co., 265 So.2d 787 (La.App. 3d Cir.1972); James v. Lykes Bros. S.S. Co., 175 So.2d 444 (La. App. 4th Cir.), writ denied 248 La. 358, 178 So.2d 653 (1965). To meet its burden Sohio submitted several depositions and affidavits *940 in support of its motion for summary judgment.
To reinterate, the affidavit of Raymond Broussard, a graduate in petroleum engineering who has been in the oil business for twenty-five years with Sun Oil Co. and Sohio and who at the time of the alleged accident was the district manager for Sohio over six states and the Gulf of Mexico, states that the usual and customary procedure in the industry is that oil companies perform the function of workover operations, including associated operations such as wireline service, by using independent oil well servicing companies.
Similarly, the affidavit of R.L. Packer, an employee of Sohio for twenty-one years and presently a district superintendent, confirms that it is usual for oil companies to hire independent contractors to perform workovers and related operations. The clear import of his affidavit is to the effect that Sohio, as well as other oil companies, do not have employees and/or equipment capable of performing wireline work. In conclusion Packer states: "[I]f these operations were not performed by independent contractors it would be necessary for Sohio to hire [and presumable train and equip] workers and employees of its own to perform these operations...."
Considering the facts as set forth in the supporting affidavits and applying the analysis previously set forth, it is clear that this case is a "specialty" case. Wireline service (the contract work) is a highly specialized, separate support industry of the oil business. It requires a degree of training, experience, skill and equipment not normally found outside the wireline field. It is so specialized that there is a need for numerous wireline service companies to service the industry's needs. We hold that wireline work is "specialized per se," and therefore, as a matter of law, Sohio is not Berry's statutory employer.
Even assuming that wireline work was a non-specialty field, our decision would be no different. Workovers, involving wireline work are not so routine and customary. If they were, Sohio, as well as other oil companies, would hire their own employees trained in wireline work. As has been stated, Sohio has neither the manpower nor the equipment to do wireline work. Lastly, no industry participant does wireline work with its own employees. Considering all these factors, it is clear that wireline work is not the type of work normally done by employees, but instead, is a type of work done by independent contractors.

DECREE
For the assigned reasons, the judgments of the lower courts granting Sohio's motion for summary judgment are reversed. Sohio is therefore amenable to tort suit and the case is remanded to the trial court for a trial on the merits against both Sohio and its insurer in accordance with law.
REVERSED AND REMANDED.
DENNIS, J., concurs with reasons.
NOTES
[1] Section 1061 provides in part:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work ... any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him....
La.R.S. 23:1061 (1985).
[2] Section 1032 provides in part:

The rights and remedies herein granted to an employee or his dependent on account of injury, or compensable disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies... against his employer, or any principal.... For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
LA R.S. 23:1032 (1985).
[3] The discussion throughout the remainder of this opinion does not deal with what may be called the "two-contract" statutory employer defense. La.R.S. 23:1032, 1061. In that situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the "general." See Lewis, supra (in dicta); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La.App. 5th Cir.1986); Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La.App. 5th Cir.1985); Brown v. Ebasco Services, Inc., 461 So.2d 443 (La.App. 5th Cir.1984), writ denied in part 462 So.2d 1235 (La.1985); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1st Cir.1984); Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir.), writ denied 460 So.2d 1045 (La.1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La. App. 4th Cir.), writ denied 459 So.2d 535 (La. 1984); Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La.App. 3d Cir.), writ denied 449 So.2d 1356 (La.1984).
[4] While not articulating reasoning which follows the above outlined analysis, almost all of the intermediate court cases since Benson have reached correct results. In reviewing these cases it is clear that todays reasoning is in fact applied by our brothers below. See for example:

(a) Speciality Cases: Holmes v. St. Charles General Hosp., 465 So.2d 117 (La.App. 4th Cir.1985) (Tort immunity denied where Phlebotomist was injured in a hospital who had contracted out this type of specialized pathology work.)
(b) Non-speciality Cases: Perrilloux v. Du Pont De Nemours Co., 483 So.2d 669 (La.App. 5th Cir.1986) (Tort immnuity sustained where janitor was injured, and it was shown that defendant's employees normally did this type of work.); Poirrier v. Cajun Insulation, Inc., 459 So.2d 737 (La.App. 4th Cir.1984) (Manual laborer performing work which was part of the general maintenance was within the scope of the statute.); Smith v. AMF Tuboscope, Inc., 442 So.2d 679 (La.App. 1st Cir.1983) (The statutory employment issue was not disputed, but the case allowed the immunity where the injured employee was a manual laborer and it was shown that defendant's employees did the same work. This case could have been handled under the "two-contract" rule).
(c) No Longer Engaged: Wilson v. A-1 Industries, Inc., 451 So.2d 1251 (La.App. 4th Cir.), writ denied 457 So.2d 14 (La.1984) (Tort immunity denied where security guard was injured and at the time of the accident the company did not handle security work with its own employees, but had done so some time prior to and immediately following the accident.)
Only one reported case since Benson is not aligned with the reasoning expressed herein. See Butler v. Home Ins. Co., 448 So.2d 801 (La.App. 2d Cir.), writ denied 450 So.2d 954 (La.1984). To the extent that it is inconsistent with the views expressed herein it is overruled.