KLEES, Judge.
This matter involves two lawsuits which arose out of an accident on April 27, 1983, in which plaintiff, Michael Dobson, an employee of Jack Legett Company (Jack Le-gett), was injured as defendant, New Orleans Public Service Inc. (NOPSI) relocated a street light standard from its old base to a new base. In this suit Michael Dobson, plaintiff filed suit for his personal injuries. In the other suit Wausau Insurance Company, the workers' compensation carrier for Jack Legett, filed its own action to recover from NOPSI the sum that it paid to plaintiff for lost wages and medical expenses. The two suits were consolidated for a trial on the merits. The district court dismissed Dobson’s suit finding that he was in the course of his employment when injured and that his employment was within the scope of the contract between Jack Legett and NOPSI. The court’s judgment thereby precluded Wausau’s action against NOPSI for Wausau was not entitled to recovery if plaintiff was found to be a statutory employee of NOPSI. From the dismissal, Dobson appeals.
The issue on appeal is whether defendant is the “statutory employer” of plaintiff. LSA-R.S. 23:1061.
The facts surrounding the accident show that the City of New Orleans extended Bullard Avenue in New Orleans East. As a result, NOPSI had to remove a single street light which was in the roadway to a new location on the neutral ground. NOPSI originally contracted (oral contract) with Jack Legett to perform all necessary work in the relocation. A few days prior to the accident, Jack Legett and NOPSI agreed that NOPSI would lift the pole from its old base and relocate it to the new base, *1191 while Jack Legett would bore a pipe underneath Bullard Road, pour the new foundation and do all underground wiring. As the NOPSI employees were moving the pole, plaintiff noticed that the pole was about to contact high voltage overhead power lines. Aware of the imminent danger, plaintiff went to assist the NOPSI employees and was injured as the pole hit the overhead lines sending a severe electrical charge through his body. This suit followed.
The three level analysis provided by Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), requires that we first consider the entire scope of the work contract to determine whether the contract work is specialized or non-specialized. The record clearly indicates that prior to trial, the attorneys for Dobson, Wausau and NOPSI stipulated that the relocation of utility poles was non-specialized work.
If the contract work is non-specialized, “the inquiry then shifts to a comparison of the principal’s trade, business or occupation and the contract work to see if the latter can be considered a part of the principal’s trade, business or occupation.” Berry, supra at 938. At this second level of analysis we must determine if the contracted work is of the “routine”, “customary”, “regular” and “predictable” type which Berry says falls within the scope of LSA-R.S. 23:1061. Non-recurring or extraordinary constructions and repairs usually are outside the scope of the statute, while general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of the statute. Berry, supra; Palmer v. Loyola University, 496 So.2d 421 (La.App. 4th Cir.1986). Berry also says that it is relevant to consider whether the “principal has the equipment and/or manpower capable of performing the contract work” and whether “industry participants normally contract out this type of work or do they have their own employees do the work?”.
Regarding the second level of analysis the record is replete with evidence that relocation of the light pole was “regular” and “routine” work for NOPSI. Roland Bienvenue, the NOPSI supervisor of the job in question, testified that NOPSI normally would have relocated the pole but could not because of a manpower shortage. He said that after the City authorized NOPSI to relocate the pole, he informed his supervisor that he did not have enough men to do the job because half of them were at the World's Fair site preparing for the fair. NOPSI then decided to contract the work out to Jack Legett. The original contract called for Jack Legett to do the entire job but was then modified in that NOPSI would actually move the pole from the old base to the new base because it was better equipped to do so. The record also indicates that prior to trial, the attorneys for the parties stipulated that “the work contracted to Jack Legett in general was part of the trade, business, or occupation of NOPSI having to do with the distribution of electricity in the City of New Orleans.”
The third level of analysis in Berry calls for a determination of whether the principal is engaged in the work at the time of the alleged accident. LSA-R.S. 23:1032. The evidence in the record leaves no doubt that NOPSI was engaged in the work at the time of the injury. William Krummel, a partial owner of Jack Legett, testified that the contract had already begun when the parties decided that NOPSI would move the pole. He stated that Jack Legett had layed the conduit and poured the new foundation. He further testified that the morning of the accident, his men were in the area to finish the job. They still had to run the wires in the new foundation and connect them as soon as NOPSI put the pole in the new base. He also testified that if it was a hot splice, NOPSI would have made the splice, not Jack Legett.
The plea of “statutory employer” under the provisions of section 1061 is an affirmative defense and the burden of proof is upon the party asserting it—here NOPSI. Berry, supra; Benson v. Seagraves, 436 So.2d 525 (La.1983). Considering the facts in the record and applying the analysis previously set forth, it is clear that NOPSI has met its burden establishing that it was *1192 the statutory employer of plaintiff. For this reason Wausau Insurance Company is not entitled to recover from NOPSI the sums it paid to Dobson. Accordingly, we affirm the district court judgment dismissing the suit.
AFFIRMED.