LeBLANC, Judge.
The issue presented in this tort suit is whether plaintiff is the “statutory employee” of defendant. See La.R.S. 23:1061. After examining the evidence in this record pursuant to the three level analysis enunciated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), we find that the record does not clearly establish whether plaintiff is defendant’s statutory employee. Therefore, we reverse the trial court’s judgment which granted defendant’s motion for summary judgment.
Plaintiff, Joseph Ardoin, Jr., was employed by Anco Insulators, Inc. (Anco) as a mechanic insulator. Anco had contracted with BASF Wyandotte Corporation (BWC) to perform maintenance insulation work at *685 BWC’s Geismar plant. Mr. Ardoin brought this tort suit against BWC for injuries he allegedly sustained when an accident occurred at the plant involving the release of phosgene gas in the area where Mr. Ardoin was working.
BWC successfully moved for summary judgment on the grounds that since plaintiff and his employer were performing routine maintenance and repair work for BWC and that this work was a part of BWC’s trade, business or occupation, plaintiff’s exclusive remedy for his injuries is under the worker’s compensation statute. See La.R. S. 23:1032 & 1061. Plaintiff appealed contending that the insulation work performed by Anco is specialized per se and that the insulation work is not part of BWC’s trade, business or occupation. Therefore, plaintiff argues that the judgment of the trial court is manifestly wrong and should be reversed.
A motion for summary judgment should be granted where it is shown that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268, 1269 (La.1981). Furthermore, inferences to be drawn from the facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Duvalle, 396 So.2d at 1269.
In order for BWC to succeed under its motion, it must be undisputed that BWC was plaintiff’s principal or statutory employer. The pertinent analysis, outlined in Berry requires an initial determination of whether the contract work is specialized or non-specialized. In order to make this determination, Berry directs that “courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field.” Berry, 488 So.2d at 938. If the contract work is “specialized per se, as a matter of law the work is not a part of the principal’s trade, business or occupation, and the principal is not the statutory employer of the specialized contractor’s employees.” Id. However, if the contract work is found to be non-specialized, “the inquiry shifts to a comparison of the principal’s trade, business, or occupation and the contract work to see if the latter can be considered a part of the principal’s trade, business or occupation.” Id. The Berry decision listed several factors which should be examined in order to resolve the factual issue of whether the contract work is part of the principal’s trade, business or occupation:
1) “Is the contract work routine and customary? That is, is it regular and predictable?” Id.
The Berry court reasoned that general maintenance and repair work usually are within the scope of coverage of the worker’s compensation statute while non-recurring or extraordinary repairs are usually not within the scope of coverage.
2) "Does the principal have the equipment and/or manpower capable of performing the contract work?” Id.
Pursuant to this question, the Berry court explained that the essential determination is whether the contract work is ordinarily performed by the principal’s employees.
3) “What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work?” Id.
Again, the primary focus is whether the contract work is ordinarily handled by the principal’s employees.
The last tier of the Berry analysis requires the court to decide whether the principal is engaged in the type of work being performed by the contractor at the time of the alleged accident.
Applying the Berry analysis to the facts of the case, we find that the record does not contain enough information describing the insulation work performed by Anco for us to determine whether the work is specialized or non-specialized. The available depositions and affidavits do not adequately describe Mr. Ardoin’s job. The evidence *686 does not indicate whether Mr. Ardoin’s job entailed decisions regarding when and where insulation needed to be replaced within the plant and what types of insulation should be used. Furthermore, lists of tools which Anco agreed to supply in the maintenance contract between BWC and Anco are included in the record. However, there is no testimony to establish which of these tools were actually used in the insulation work performed by Anco. Therefore, we cannot determine whether the tools used by Anco were of a specialized nature. Therefore, we find that whether the insulation work performed by Anco is specialized is an unresolved genuine issue as to material fact.
We also find that the record in this case does not contain the pertinent information that is needed for us to determine whether the insulation work performed by Anco is part of BWC’s trade, business, or occupation. An examination of the first factor listed in Berry would suggest the finding that BWC was plaintiff’s statutory employer. The insulation work performed by Anco was regular, routine and customary. Proper insulation of the pipelines in the BWC plant was needed to insure the smooth operation of the plant. The record indicates that Anco’s employees were engaged in repair and maintenance insulation work on a full-time basis at the plant.
However, an examination of the second factor listed in Berry would suggest that BWC was not plaintiff’s statutory employer. The record indicates that although BWC employees stripped insulation about once a month during emergency situations, none of the BWC employees regularly performed insulation work. Furthermore, when they did strip insulation during an emergency situation, they did not ever replace the insulation in a finished state. In these situations, Anco’s employees were called to finish the insulation work. The record also establishes that Anco provided at least the majority of the tools utilized by its employees.
Since an examination of the first two factors listed in Berry leads to conflicting results, we find in this case it is important to examine whether other industries which are in need of insulation services normally contract out this type of work or have their own employees perform this type of work. The record in this case does not include any evidence regarding the practice of other industry participants. We find that this information is important in determining whether the insulation work performed by Anco is part of BWC’s trade, business or occupation. The absence of this information also presents an unresolved genuine issue as to material facts.
Since there are genuine issues as to material fact regarding the first two tiers of the Berry analysis, it is not necessary for us to address the third tier of the Berry analysis regarding whether BWC was engaged in insulation work at the time of the accident.
For these reasons, we find that summary judgment is improper. Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings. All costs of this appeal shall be paid by defendant, BWC.
REVERSED AND REMANDED.