552 So.2d 768 (1989)
Henry SANDERS
v.
The BATON ROUGE WATER WORKS COMPANY, and ABC Insurance Company.
Nos. CA 88 1643, CA 88 1825.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Writ Denied February 2, 1990.
John W. Degravelles, Baton Rouge, for plaintiff-appellant Henry Sanders.
John W. Perry, Baton Rouge, for intervenor-appellant (2)nd Louisiana Retail Food Dealers Ass'n.
John S. Thibaut, Baton Rouge, for defendant-appellee Baton Rouge Water Works Co., American & Foreign Ins. Co.
Mesonie T. Halley, Jr., Lake Charles, for defendant-appellee Intern. Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
The plaintiff, Henry Sanders, and the association which provided worker's compensation coverage to Sanders, the Louisiana Retail Food Dealers Association (LRFDA), appeal separate summary judgments rendered in favor of the defendants, The Baton Rouge Water Works Company (Water Company) and its insurers, American and Foreign Insurance Company (American) and International Insurance Company (International), wherein the court found Sanders to be the Water Company's statutory employee and dismissed Sanders' tort suit.

FACTUAL BACKGROUND
The Water Company is a utility which supplies water to its customers in Baton Rouge and East Baton Rouge Parish. The Water Company constructs, maintains and repairs the facilities needed to deliver the water. As part of its operation, it maintains a operations yard wherein material, supplies, rolling stock and equipment necessary to maintain and repair the water system are kept. At the time of the incident, this yard was located adjacent to the Water Company's main offices, and access was controlled by Water Company personnel during normal business hours.
In order to provide "around the clock" repair service to customers, all Water Company employees with the rank of foreman or above had keys to permit after hours access to the operations yard, and the shop/warehouse and the materials "cage" located therein. If laborers were needed to perform emergency repairs or after-hours maintenance, a foreman or other supervisor *769 would meet them at the operations yards to allow entry to the yard and access to the materials and vehicles needed.
Beginning in 1984, it became apparent to the Water Company management that as much as $60,000.00 worth of inventory was missing from the operations yard. This loss involved items of substantial size and weight such as brass "goods" and gasoline. The inventory was secured behind a six-foot high chain-link fence which surrounded the property. The gates were locked after normal business hours. Additionally, the shop/warehouse building and the "cage" in the building where many of the materials were kept were secured by separate locks. None of the locks showed any sign of forced entry. Management concluded that the inventory was being taken off of the premises after hours by the improper use of the keys to the three sets of security locks. Water Company officers stated that at the time of the discovery of the missing inventory, supervisors and management personnel had engaged in an informal security system whereby they would periodically drop by the facilities after hours on a voluntary basis to look for unusual activity. Additionally, the Water Company utilized the services of the on-call night shift employees to drive around to the company's different facilities to check and see that no one had broken into them. Initially, the Water Company installed cameras to deter the thefts from the yard; however, the cameras were stolen. The Water Company then decided to change the locks and hire a security service at the operations yard rather then assign its own supervisors to constant after hours duty at the yard. On October 1, 1984, the Water Company contracted with Weiser Security Service, Inc., (Weiser) for Weiser to provide one uniformed officer after normal business hours and on weekends at the Water Company's operations yard.[1] That officer was the only person with keys to the yard and he was responsible for controlling all vehicular and pedestrian traffic after regular business hours.
Sanders was an employee of Weiser assigned to the Water Company as security officer. At approximately 1:30 p.m. on Sunday, June 30, 1985, Sanders alleges that he slipped and fell while climbing on a pipe rack to check out a loud noise. He claims that the pipes rolled out from under him and he suffered an incapacitating back injury. At the time his deposition was taken on August 27, 1987, he had not returned to work. After the June incident, the LRFDA paid Sanders compensation benefits, in the amount of $46,910.81, and medical expenses in the amount of $14,446.59.

PROCEDURAL HISTORY
Plaintiff filed his tort suit on June 26, 1986. LRFDA intervened to recover its compensation payments on March 20, 1987. The Water Company's other insurer, International, was added by a supplemental and amending petition. The Water Company and American moved for a summary judgment, claiming statutory employer's status and tort immunity. International also filed a motion for summary judgment on the same grounds. Oral arguments on the motions were heard on August 12, 1988. The judgment holding that Sanders was the Water Company's statutory employee and dismissing Sanders' tort suit and LRFDA's intervention against the Water Company and American was signed on August 18, 1988. The judgment dismissing International on the same grounds was signed on September 6, 1988. Sanders and LRFDA subsequently perfected their appeals from both judgments, alleging that the trial court erred in granting summary judgment *770 because (1) the water works was not engaged in the trade, business or occupation of security guard work at the time of the accident and (2) the court did not properly consider the scope of the entire contract.

SUMMARY JUDGMENT
The summary judgments were granted on the basis that the Water Company was Sanders' statutory employer under La.R.S. 23:1061; therefore, the Water Company and its insurers were afforded tort immunity under La.R.S. 23:1032. The supreme court has established a three-pronged test for statutory employment status, as succintly explained in Cantrell v. BASF Wyandotte, 506 So.2d 793, 794 (La.App. 1st Cir.), writ denied, 512 So.2d 1178 (La.1987):
The keys words for determining whether defendant was a statutory employer are "part of his trade, business, or occupation." LSA-R.S. 23:1061. The determination whether statutory employment exists requires a three-level analysis. Berry v. Holston Well Service, Inc., 488 So.2d 934, 937 (La.1986). The first inquiry is whether, considering the entire scope of the work contract, the work is specialized, that is, whether it "requires a degree of skill, training, experience, education and/or equipment not normally possessed outside the contract field." Id. at 938. A determination that the contract work is specialized precludes statutory employment. Otherwise the analysis continues to the next step: comparing the principal's trade, business, or occupation to the contract work.
Normally, for work to be considered within a principal's trade, business, or occupation, it must be routine, customary, or, at least, an activity that is necessarily part of day-to-day operations, rather than extraordinary or nonrecurring activities. Id. Our review should also explore whether, considering manpower and equipment, the principal is equipped to handle such activity. Finally, we must determine whether the principal was engaged in the work at the time of the accident. It matters not whether the principal could have done the job, i.e., whether he had the resources; the question is whether he was "engaged in the enterprise at the time of the injury." Id.

Initially, we note that plaintiff's security work is not specialized per se. Plaintiff's activity as a security officer was part of the routine or customary day-to-day operation of the Water Company's operations yard; the same type of activity that to a large extent had been previously handled on an informal or intermittent basis by Water Company supervisory personnel. It is evident from a review of the contract document that Sanders' duty of maintaining a high profile and monitoring traffic did not require any special training or expertise. Additionally, jurisprudence has determined that security work is not specialized: Cantrell; Sandifer v. Crown Zellerbach Corporation, 470 So.2d 483 (La. App. 1st Cir.), cert. denied, 475 So.2d 357 (La.1985); Mouton v. Louisiana Power & Light Company, 545 So.2d 1114 (La.App. 5th Cir.1989); Verdun v. Carrollton S.C. Corporation, Inc., 499 So.2d 342 (La.App. 4th Cir.1986).
Secondly, as noted previously, plaintiff's duties were part of the day-to-day operation of the Water Company as evidenced by the affidavit and depositions of Water Company officers wherein they stressed that controlled access to the inventory stored in the operations yard was necessary for emergency after-hours repairs to the water system. While the Water Company is not a manufacturing plant in the sense that the defendants were in Cantrell and Sandifer, security at its operations yard is essential to the continued operation of the Water Company's facilities and is therefore an intergral part of the business. It is also apparent from the depositions that the Water Company had utilized its own personnel to control after-hours access until the company determined that in-house theft was occurring. While the Water Company had the manpower and the equipment to continue to control access to the operations year, the company decided it was more economical to utilize an outside source. If we consider the entire scope of the work contract, that is, to maintain a high profile and to monitor all vehicles and pedestrians entering *771 the premises, thus protecting the operations yard from trespassers and unauthorized removal of inventory, then we must conclude that Sanders' job was a part of the Water Company's trade, business, or occupation at the time of the alleged injury.
Last, but not least, while the security officer provided by Weiser had sole control of keys to the operations yard itself, John W. Dellsperger, Senior Vice-President of Operations, testified in his deposition that they used their own personnel at the time of the incident and that they continued to use their own personnel to patrol their other facilities to check and see that no unauthorized persons had broken into these different areas. Additionally, access to the operations yard was and is controlled by Water Company personnel during normal business hours. Thus, the company has shown its continued engagement in security type work.
A summary judgment is properly rendered if the pleadings, affidavits and documents generated by discovery devices show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The judgment herein was based on the pleadings, an affidavit and the depositions of Water Company officials with first hand knowledge of the company's operations. Upon a thorough review of the record we find no genuine issue of material fact.

CONCLUSION
For the foregoing reasons, we find that the trial court correctly determined that Sanders was within the classification of a statutory employee at the time of his accident and we affirm both summary judgments in their entirety. Costs of this appeal are to be borne by the appellants, Henry Sanders and Louisiana Retail Food Dealers Association.
AFFIRMED.
NOTES
[1] The contract between the Water Company and Weiser provided the following job description:

One (1) uniformed officer (armed or unarmed as instructed by the client) to maintain a high profile through-out the property, protecting the premises against trespassers, fire, vandalism, unauthorized removal of inventory, etc. The primary post of the officer will be in the foremen's office/front gate areas.
The officer will monitor all vehicular and pedistrian [sic] traffic after regular business hours by the use of vehicle control logs, key control, after hour authorization entry list, etc. (Exact procedures to be established by the client and Weiser Security.)