**D.T. PIKE and Geraldine Pike**

v.

**MURCO DRILLING CORPORATION.**

No. 1:90–CV–0467.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 27, 1991.

---

Ray Hensarling, Hensarling & Hollan, Houston, Tex., for plaintiffs.

Katherine Clark Hennessey, Weiner, Weiss, Madison & Howell, Shreveport, La., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

On August 1, 1989, D.T. Pike sustained serious back injuries on the premises of Murco Drilling Corporation when he fell approximately twelve feet to a concrete slab. Murco is a drilling contractor in Shreveport, Louisiana, and periodically refurbishes, repairs and routinely performs maintenance work on its drilling rigs.

As an employee of BPS, a successor to Brewster Parts & Services, Pike served as an expert mechanic on oil field drilling rigs. He was employed by BPS primarily to repair and recondition draw works, which includes "plumbing lines" from the drilling floor to other areas of the rig.

Murco, a drilling contractor for over twenty years, owns and operates fifteen rigs. Upon completion of one of its drilling contracts, Murco's drilling rig, No. 6, returned to Murco's yard in Shreveport. Murco maintains its own rigs as part of its business operations of drilling on-shore oil and gas wells. To refurbish and repair No. 6, Murco hired approximately ten to twelve BPS employees. Murco had no written contract with BPS specifying the scope of Pike's employment. While employed at No. 6, Pike's work was directed towards draw works rather than general repair. Occasionally, he performed general mechanical work.

Pike suffered a serious injury when he attempted to descend a 16′ metal ladder from the motor skid floor to the ground. Because the ladder was not secured to the infrastructure, it slipped backwards, falling to the ground. When the ladder slipped, Pike fell about twelve feet to a concrete pad, causing his injuries. Approximately three weeks before the accident, Murco purchased the metal ladder for use in the refurbishing of Rig 6.

Plaintiff, Murco employees, as well as other contractors and their employees used the ladder in overhauling No. 6. The identity of the person who placed the ladder in its precarious position is unknown. Apparently, Murco was negligent to a substantial degree and to a lesser degree, Pike. Pike received a compression fracture of one of the vertebrae in his back, and two ruptured intervertebral discs. At the time of the accident, Pike was 58 years old. He had a history of back problems in addition to the usual degenerative changes found in a man of his age and occupation.

At the close of plaintiff's evidence in this bench trial, and again at the close of all the evidence, the defendant Murco moved for an involuntary dismissal pursuant to Rule 41(b) FED.R.CIV.P.

Louisiana Workers Compensation Act, LA.REV.STAT.ANN. § 23:1021, et seq. (the Act) provides the exclusive remedy for employees who sustain injuries arising out of and in the course and scope of their employment. The Louisiana statute insulates certain employers from tort liability upon a finding that an employer is a "statutory" employer. LA.REV.STAT. ANN. § 23:1061. In *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), the Louisiana Supreme Court enunciated a three level analysis for determining whether a person is a statutory employer. *See Brock v. Chevron Chemical Co.*, 750 F.Supp. 779 (E.D.La.1990). The first step is to determine whether the contract work is specialized or nonspecialized. The *Berry* court stated that a trial court should look to "whether the contract work requires a degree of skill, training, experience, education, and/or other equipment not normally possessed by those outside the contract field." *Berry*, 488 So.2d at 938. If the contract work is specialized, the principal is not the statutory employer of the contractor's employees. *Id.*

Based on the record, Pike's work is not specialized. The defendants' witnesses testified, without substantial contradiction,

that, time permitting, Murco's employees also engaged in rebuilding and repairing draw works, motors, plumbing, air hoses, etc., on a routine basis. Murco did not solicit machinery used on other drilling rigs for repair, but it did perform every act necessary to build, repair, rebuild and refurbish its own rigs.

The second step requires the court to compare the contract work to the trade, business, or occupation of the principal, to determine if the contract work can be considered a part of the principal's trade, business, or occupation. *Berry*, 488 So.2d at 938. While Murco did not overhaul rigs on a daily basis, the overhauling done by BFP employees was an integral part of Murco's business, trade or occupation.

Finally, the court must determine whether the principal is actually engaged in its trade, business, or occupation at the time of the injury. This requirement does not demand that the principal's employees work side-by-side with the contractors' employees on the day of the injury. *Seeney v. Citgo Petroleum Corporation*, 848 F.2d 664, 667 (5th Cir.1988). Nor does it require the principal to possess the resources to complete the job. *Sanders v. Baton Rouge Water Works Company*, 552 So.2d 768, 770 (La.App. 1st Cir.1989). Though Murco had the manpower, expertise, and equipment to perform the work, they decided it was more time efficient to utilize an outside source. Considering the entire scope of Pike's employment, that is, to overhaul No. 6, the court must conclude that Murco established its continued engagement in the business.

From the facts proved at trial, and set forth above, it is painfully apparent to the court that all three elements of the *Berry* test are satisfied.

The court overruled the motion for involuntary dismissal at the conclusion of the plaintiff's case, and took under advisement plaintiff's motion which was renewed after all parties had closed the evidence. The court grants defendant's motion for involuntary dismissal and, accordingly, grants

judgment for the defendant. Costs are to be borne by the party incurring the same.