I .WALTZER, Judge.
STATEMENT OF THE CASE
Elodie Boyd filed suit on 20 October 1989 for damages allegedly sustained on 26 October 1988, when she fell in a cable trench located at the Louisiana Super-dome. She sued South Central Bell Telephone Company, owner of the cable trench; New Orleans Public Service, Inc., alternatively named as owner of the trench; and the Board of Commissioners Louisiana Superdome and Exposition District (LSED). Boyd amended her petition to add the State of Louisiana as a defendant. Boyd stipulated that the amount of her cause of action, exclusive of interest and costs, did not exceed $20,000 and withdrew her demand for a jury trial.
Travelers Insurance Company intervened for compensation benefits paid to Boyd.
The case was tried to the court on 9 April 1998. On 29 June 1998 the trial court rendered judgment in favor of Boyd and against the State of Louisiana and *1095 LSED for medical expenses of $437, lost wages of $373.22, and general damages 1¡>of $16,500. On 16 July 1998 Boyd dismissed with prejudice her claim against Entergy New Orleans, Inc., formerly known as New Orleans Public Service, Inc. On 22 July 1998 the State and LSED moved for a suspensive appeal from that judgment and from the court’s award to Travelers Insurance Company of $2,564.65 medical expenses and $388.78 compensation indemnity payments. On 24 August 1998, Boyd filed an answer to the appeal in the trial court, seeking to increase the damage award.[1]
STATEMENT OF FACTS
There is no dispute on appeal as to the nature and cause of the accident. Boyd, a security guard employed by Facility Management of Louisiana, Inc. (FML), was injured when, as she walked between the Superdome and its YIP parking area, she fell into a cable trench embedded into the walkway. At the time of the accident, she was acting in the course and scope of her employment with FML.
The Louisiana Constitution, Art. IV, § 47 provides for the LSED. LSED is constitutionally authorized and empowered in § 47(D)
to ... operate and maintain an enclosed and covered stadium ... related buildings, and all facilities and properties incidental and necessary to a complex suitable for any or all types of sports or recreation, ...
From 1 July 1977 through 16 April 1993 (the date of the affidavit attached to the LSED/FML contract), including the date of Boyd’s accident, FML was under | ¡¡contract with LSED to operate and maintain the Superdome. The contract provided in pertinent part:
2.1Grant of Power to FML. The State hereby grants, and FML hereby accepts, the exclusive right to perform and furnish, or cause to be performed and furnished, from the effective date hereof, all management, services, labor and materials needed to operate and maintain the Superdome known as the “Louisiana Superdome”, in the most efficient and profitable manner as can be reasonably expected. It is the intent of the parties that FML will have full authority over the operation of the Super-dome and all of its facilities and related properties.
2.2 Employees Hired by FML. Employees hired by FML will be employees of FML, and not of the State, ... The authority of FML will be absolute with respect to the number, function, qualifications, compensation and other terms and conditions relating to its employees, subject to the provisions of Paragraph 19.1 of this agreement [which requires written approval of contract modifications].
2.3 Delivery of Superdome to FML. The State covenants that it will, no later than the commencement date of this agreement, deliver to FML the Super-dome, and that same will be equipped with sufficient inventory, equipment and supplies to enable FML to fulfill its obligations under this agreement.
[[Image here]]
10.1. Indemnification by FML. FML agrees to indemnify and hold harmless the State ... from and against any and all liability ... growing out of ... any and all claims, demands, suits, actions or proceedings which may be made or brought against any of the State Indemnities by reason of or as a result of (a) the lack of exercise of reasonable care by FML in the employment of any of its employees, or the lack of reasonable care in the supervision of the employees’ ongoing employment, or (b) from the willful act or omission, or gross negligence of FML.
[[Image here]]
|411.2. Maintenance of Superdome. To the extent that the State has made *1096 funds available, FML agrees to maintain the Superdome and all its facilities in the condition received, reasonable wear and tear excepted, and agrees to continue maintenance procedures which will, subject to availability of funds, keep the Superdome in good condition and working order.
[[Image here]]
17.1 Independent Contractor. The State and FML agree that the only relationship created hereby is one for supplying services and that FML is an independent contractor and not an agent (except as otherwise herein specifically provided) or partner of the State.
Danny Vincens, one of the five directors of FML who report directly to the general manager, testified that FML provides all security services at the Superdome. Neither the State nor LSED provided security services, although these entities owned the building and grounds.
FML’s technical services manager for the Superdome, Wayne William Griffiths, testified that FML has total responsibility for Superdome maintenance.
ASSIGNMENT OF ERROR: The trial court erred in failing to grant LSED statutory immunity from a tort action brought by an employee of FML as a result of work-related injury. In the alternative, the trial court erred in failing to grant LSED statutory immunity where the scope of FML’s contract work, to manage, maintain and operate the Superdome, is identical to LSED’s constitutional mandate to manage, maintain and operate the Superdome; the contract work is routine, customary, regular and predictable; the contract work is ordinarily handled by employees and is not normally contracted out.
At the time of the accident and at the time suit was filed, La.R.S. 23:1061 provided in pertinent part:
| BWhen any person (in this Section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this Section referred to as contractor), for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable . to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
The controlling case law under that pre-1997 version of the statute is found in Berry v. Holston Well Service, 488 So.2d 934 (La.1986) and Kirkland v. Riverwood Intern. USA Inc., 95-1830 (La.9/13/96), 681 So.2d 329.[2] Since statutory immunity is an affirmative defense, defendant has the burden of proving its status as statutory employer. Berry, supra 488 So.2d at 939.
Under the former law, a determination of whether a statutory employment relationship exists involves a three level analysis. In the first level, the primary focus is on the SCOPE of the contract work. The central question to be answered is whether the contract work is specialized or non-specialized, a question of fact. Courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by *1097 those outside the contract field. If so, AS A MATTER OF LAW, the work is NOT a part of the principal’s trade, business or occupation, and the principal is NOT the | (¡statutory employer of the specialized contractor’s employees. Betry, supra, 488 So.2d at 937-938.
Once it is determined that the contract work is NON-SPECIALIZED, the inquiry shifts to a comparison of the principal’s trade, business or occupation and the contract work, to see if the latter can be considered a part of the principal’s business. The supreme court listed the following non-exclusive guidelines for making this determination:
(1) Is the contract work routine and customary. ...
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? ...
(3) What is the practice in the industry relative to the contract work?
Finally, the court must determine if the principal was engaged in the work at the time of the alleged accident. La.R.S. 23:1032. Id:
Provision of security services is generally a specialty function. Property and business owners routinely contract with security providers to perform this function. LSED and the State have provided no evidence that they customarily provide their own security services or that they in fact have the manpower and equipment capable of doing so. The State and LSED provided no evidence that the contracted security work does not require a degree of skill, training, experience, education and/or equipment not normally possessed outside the security field. Therefore, LSED and the State have failed to carry their burden of proving entitlement to the statutory employér immunity defense outlined in Berry, supra.
The alternative defense claim of statutory employer immunity under the “two-contract” theory presents a different issue.
|7At the time the instant cause of action arose, the immunity provision of the Workers’ Compensation Law, La.R.S. 23:1032(A) provided in pertinent part:
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease. This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine....
In 1989, the section was amended, effective 1 January 1990, to add a definition of “principal” as a person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. This court has held that it is this section, together with La.R.S. 23:1061, that created the “two contract” statutory employer defense. See, Taylor v. Broadmoor Corp., 623 So.2d 674 (LaApp. 4 Cir.1993).
Since this provision was not in effect at the time of Boyd’s injury, it cannot be the basis for an alternative statutory employer immunity defense for the State and LSED.
CONCLUSION AND DECREE
The judgment of the trial court is affirmed. Costs are assessed against the State and LSED.
AFFIRMED.

. Boyd’s appellate brief fails to discuss the answer to appeal, which we deem to have been abandoned. See Rule 2-12.4, Uniform Rules — Courts of Appeal.

. These cases were legislatively overruled by Section 2 of Acts 1997, § 1. Section 3 of Acts 1997, No. 315, § 1 provides that the amendment shall be applied prospectively only and shall not apply to any cause of action arising prior to the effective date of the Act.