453 So.2d 292 (1984)
Charles Joseph CERTAIN
v.
EQUITABLE EQUIPMENT COMPANY and Allen Bradley Company.
No. 13150.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1984.
Rehearings Denied July 24, 1984.
Writ Denied November 9, 1984.
*294 Orlando G. Bendana, Wayne H. Carlton, Jr., New Orleans, for appellant.
R.K. Christovich, New Orleans, for appellees.
Wayne J. Fontana, New Orleans, for intervenor.
Before GULOTTA, GARRISON, BARRY, BYRNES and WARD, JJ.
GULOTTA, Judge.
Plaintiff, injured in an elevator accident arising out of and in the course of his employment, appeals from the dismissal of his tort suit against the elevator owners on exceptions of no right and no cause of action. In maintaining the exceptions, the trial judge concluded that plaintiff's exclusive remedy was in workers' compensation and that defendants, therefore, were immune from tort liability. We affirm.
Charles J. Certain, a laborer employed by Prestressed Concrete Products Company, Inc. (Prestressed), which manufactures concrete construction pilings and components, was injured at his employer's plant on November 6, 1976, when the "elevator" or mechanized work platform on which he was standing fell to the ground. The elevator was owned by Mandeville Properties, a joint venture of defendants Brown & Root, Inc. (Brown & Root) T.L. James & Company, Inc. (T.L. James) and Raymond International, Inc. (Raymond), and was leased to Prestressed. The three defendants were also the sole stockholders of Prestressed, and used Prestressed's concrete components in the construction of bridges and highways.
Plaintiff's suit is based on negligence, products liability, and strict liability under LSA-C.C. Arts. 2317 and 2322. Plaintiff asserts that his injury was caused by the defective and dangerous design and construction of the elevator, and defendants' failure to warn of the defects.[1]
In exceptions of no cause and no right of action, defendants claimed they were immune *295 from tort liability to plaintiff as the sole stockholders of Prestressed, and as plaintiff's statutory employer. The exceptions were referred to the merits and maintained after trial. In written reasons, the trial judge characterized the relationship between the parties as one of "a stockholder who is an employer of an individual", and concluded that plaintiff's case against defendants must therefore be dismissed.
Appealing, plaintiff contends that defendants cannot invoke the tort immunity of LSA-R.S. 23:1032[2] as "principals" or "statutory employers" of plaintiff since the evidence did not establish that he was injured while doing work that is part of defendants' "trade, business or occupation". Plaintiff further argues that defendants are not immune as "stockholders" of Prestressed since they were not engaged in the "normal course and scope" of their employment at the time of the injury. Certain claims his immediate employer Prestressed, a separate corporate entity from defendants, had exclusive use of the equipment and plant leased from Mandeville, (owned by defendants), and was simply acting as a fabricator and vendor of concrete parts for defendants' use in building bridges. We disagree.

PRINCIPAL OR STATUTORY EMPLOYER
LSA-R.S. 23:1032 provides that an action in worker's compensation shall be the exclusive remedy of an injured employee against any "principal". The statute defines "principal" as "... any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
A principal is considered the employer of a contractor's employee when that employee is engaged in work that is part of the principal's regular business. Barnes v. Sun Oil Co., 362 So.2d 761 (La. 1978); Fontenot v. Andrus Homes, Inc., 391 So.2d 42 (La.App. 3rd Cir.1980). This "statutory employment" consists of two essential elements: 1) the "work" must be part of the principal's "trade, business or occupation", and 2) the principal must have been engaged in that trade, business or occupation at the time of the injury. Lewis v. Exxon Corp., 441 So.2d 192 (La.1981), on rehearing.
Defendants' tort immunity in the instant case as a "principal" or "statutory employer" under LSA-R.S. 23:1032, therefore, requires a finding that plaintiff's work at Prestressed is part of defendants' regular trade, business or occupation. This issue is a factual question. See Lewis v. Exxon Corp., supra; Dixon v. Tugwell, 409 So.2d 343 (La.App. 1st Cir.1982); Sisk *296 v. Insurance Co. of North America, 356 So.2d 1109 (La.App. 2nd Cir.1978).
The elevator involved in plaintiff's accident was designed by Raymond Concrete Pile Co. (now Raymond International) and was originally operated by Louisiana Bridge Company (a joint venture composed of defendants Brown & Root, T.L. James and Raymond) in the fabrication of concrete pilings for its own use in constructing the Lake Pontchartrain Causeway in the 1950's.
Louisiana Bridge Company thereafter leased its plant and equipment to Prestressed Concrete Company, a corporation wholly owned by Brown & Root, T.L. James, and Raymond International as equal shareholders. Mandeville Properties, the successor to Louisiana Bridge Company and likewise owned by defendants, continued to lease the land and equipment to Prestressed. At the time of plaintiff's accident, Prestressed had "two major contracts" for fabrication and delivery of concrete bridge components for use by defendants in construction projects in Louisiana and Alabama. One construction project was a causeway over Mobile Bay, and the other was the Louisiana I-55 elevated highway.
Although Prestressed daily maintained and operated the elevator and plant, defendants received dividends from the company as its sole stockholders, and held periodic board meetings. Occasionally, tours of the Prestressed plant were conducted for defendants' prospective clients and visitors.
Prestressed, owned solely and entirely by the three defendants, fabricated concrete components that were an essential and integral part of defendants' bridge and roadway construction business. Certain, a Prestressed employee, was injured while fabricating components for use in defendants' two construction contracts.
This evidence considered, we conclude that plaintiff's employment was part of defendants' business, trade or occupation, and that defendants are plaintiff's statutory employer.
In so holding, we reject plaintiff's argument that the relationship between defendants and Prestressed is one of vendor-vendee, not principal-contractor. According to plaintiff, defendants only leased the elevator and plant to Prestressed and purchased components from the company, but did not engage, as a usual and customary business practice, in Prestressed's activity as a manufacturer of concrete components.
Where an employee is injured when undertaking work that is part of the trade, business or occupation of the principal, the mere fact that elements of sale are present in the relationship is not fatal to a finding of statutory employment. Hart v. Richardson, 272 So.2d 316 (La.1973). Furthermore, although defendants and Prestressed may be lessor and lessee, they are additionally principal and contractor because defendants have undertaken to perform part of their trade or business of constructing bridges by contracting with their lessee to fabricate and deliver essential construction components. See Schmolke v. Krauss Company, 217 So.2d 789 (La.App. 4th Cir.1969); Malone and Johnson, 14 La. Civil Law Treatise: Workers' Compensation, Second Edition, Sections 123 and 125.
In Gray v. Louisiana Power and Light Company, 247 So.2d 137 (La.App. 4th Cir. 1971), writ refused 259 La. 59, 249 So.2d 202 (1971), an electrical utility company that had contracted with Prestressed for the construction of foundations for towers supporting overhead transmission lines was held to be a "statutory employer" of an injured Prestressed employee, where the utility was in the business of manufacturing and producing electricity and the means to transmit it to its users. The facts in the instant case are even more compelling than those in Gray, supra, for application of the tort immunity afforded a "principal" under LSA-R.S. 23:1032.
Under the circumstances, we find no error in the trial judge's conclusion that these defendants are immune from tort liability to plaintiff as a principal.

*297 STOCKHOLDER IMMUNITY
Plaintiff contends, however, that defendants, though stockholders of his immediate employer Prestressed, cannot avail themselves of this statutory immunity since they were not engaged at the time of his injury in the "normal course and scope" of their employment. According to Certain, there is no evidence that any of the defendants customarily constructed the concrete pilings used in building bridges, or that they operated, supervised, or otherwise played any part in Prestressed's actual construction work.
In addition to providing tort immunity to an "employer" or any "principal" of an injured worker, LSA-R.S. 23:1032 further provides that an action in workers' compensation shall be the exclusive remedy of the plaintiff-employee against "any ... stockholder... of such employer or principal, for said injury." This broad language is limited by the final paragraph of the statute, however, which further states that the immunity from civil liability "shall not extend to ... any ... stockholder ... who is not engaged at the time of the injury in the normal course and scope of his employment."
LSA-R.S. 23:1032, written in the disjunctive, affords civil immunity from suits by an injured worker to his "employer, or any principal or any ... stockholder ... of such employer or principal...." [Emphasis ours]. Defendants in the instant case are in the unique position of being both plaintiff's "principal", as well as "stockholders" of plaintiff's immediate employer.
Although we have concluded that defendants have tort immunity as a "principal", we now address the issue of stockholder immunity because plaintiff claims tort liability attaches to defendants as stockholders not engaged at the time of the injury in the normal course and scope of their employment.
As stated in our prior discussion of statutory employment, the manufacture of concrete components by Prestressed is an intregral part of defendant's trade, business or occupation as bridge builders. During the 1950's, defendants manufactured the components for use in their Lake Pontchartrain Causeway construction project. The later incorporation of Prestressed with defendants as its sole stockholders did not change the "course and scope" of their employment.
At the time of plaintiff's accident, defendants were still engaged in the construction of bridges and the fabrication of components used in them, albeit through the corporate entity of Prestressed as well as their joint venture. Under these circumstances, it is clear that the defendant-stockholders were engaged in the normal course and scope of their employment when plaintiff was injured, and are entitled to the "stockholder" immunity afforded by LSA-R.S. 23:1032.
The final paragraph of LSA-R.S. 23:1032, which requires that the stockholder be engaged in the "normal course and scope of his employment" at the time of the injury, is obviously a necessary limitation on the broad language of the first paragraph of the same statute, which affords civil immunity to "any ... stockholder.. of ... [the] employer or principal". For example, the statutory immunity would not apply to every private investor who owns shares in a major corporation and injuries a corporate employee in a automobile collison with the employee's delivery truck on company business. The investor, who has unrelated employment, could not raise his stock ownership as a shield to the injured employee's tort action against him, since the investor was not engaged in the normal course and scope of the corporation's employment at the time of the accident.
The situation now before us is different from this hypothetical example, however, since the defendant-stockholders were engaged in the normal course and scope of their employment at the time of the injury. The "stockholder" immunity of LSA-R.S. 23:1032 clearly applies to them.

DUAL CAPACITY
We further conclude the trial judge properly dismissed plaintiff's damage suit, *298 whether it be viewed as one in negligence, products liability or strict liability under LSA-C.C. Art. 2317 or 2322.
In Hebert v. Gulf States Utilities Co., 369 So.2d 1104 (La.App. 1st Cir.1979), cited by the trial judge, the First Circuit squarely confronted the issue whether an employee, who is injured in the course and scope of his employment on property owned by the statutory employer, may sue the landowner-statutory employer in tort for breach of a duty owed the employee. The Hebert court stated that such allegations of fault were essentially a claim of failure to furnish the employee a safe place to work, and held that the landowner, pursuant to LSA-R.S. 23:1032 and 1061, was immune from tort liability to his statutory employee. The court concluded that the "dual capacity doctrine" (whereby the employee sought liability against the defendant in his capacity as landowner but not his capacity as employer) was not viable in Louisiana.
Similarly, the "dual capacity" argument has been rejected in "products liability" actions by employees against their direct or statutory employers. An allegation of a work-related injury from equipment improperly designed and constructed by the principal does not state a cause of action against such a defendant who is shielded from tort liability to the employee by the workers' compensation statute. See Tomasich v. United States Fidelity and Guaranty Co., 415 So.2d 1002 (La.App. 4th Cir.1982); Smith v. AMF Tuboscope, Inc., 442 So.2d 679 (La.App. 1st Cir.1983).
Citing Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978), plaintiff further contends, however, that the elevator involved is a "building", within the meaning of LSA-C.C. Art. 2322, and that his injury resulting from "ruin" in its original design and construction makes the defendant-owners "strictly" liable. Although we do not quarrel with the Olsen decision, it does not afford plaintiff with a right of action against his statutory employer in the instant case.
The Supreme Court in Olsen construed LSA-C.C. Art. 2322 in the context of an owner's strict liability to a third person injured by a building defect, but did not address the issue whether an owner-statutory employer can be held strictly liable under this codal article to his injured employee. Plaintiff's reliance on Olsen is therefore misplaced.
Significantly, language in Olsen indicates that LSA-C.C. Art. 2322 does not afford an injured employee a right of action against his statutory employer or pierce the immunity afforded by LSA-R.S. 23:1032. The Supreme Court in Olsen stated:

"In the absence of another statute providing otherwise, the strict liability of Article 2322 of the owner of a building for harm caused by defects in its structure or appurtenances imposes a nondelegable duty upon him to keep his building and appurtenances in repair and to be responsible to third persons for harm caused by any defect in the structure or its appurtenances." [Emphasis ours]. Supra, at p. 1291.
Reading Olsen in light of the workers' compensation statutes, we conclude that LSA-R.S. 23:1032 is a statutory exception to the strict liability of LSA-C.C. Art. 2322 and 2317, and that an employee injured in the course and scope of his employment is not a "third person" to whom the statutory employer-building owner is responsible. Under these circumstances, even assuming the elevator in the instant case constituted a defective "building" under LSA-C.C. Art. 2322, or a defective "thing" under LSA-C.C. Art. 2317, we find no error in the judgment maintaining defendants' exception of no right of action.
Accordingly, for the foregoing reasons, the judgment is affirmed.
AFFIRMED.
GARRISON, J., dissents for reasons assigned by Judge BARRY.
BARRY, Judge, dissenting with reasons.
The three defendant corporations were not engaged in the manufacture of concrete *299 pilings and are not statutory employers or principals under the compensation act. See Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App. 1st Cir.1980), writ denied 394 So.2d 281 (La.1980).
Herbert v. Gulf States Utilities Co., 369 So.2d 1104 (La.App. 1st Cir.1979) relied on by the majority, the trial judge, and defendants, involved a landowner who was a statutory employer, not a shareholder of plaintiff's employer.
I find no jurisprudence interpreting the specific language of Section 1032 as to shareholder immunity as found by the majority here. It seems to me this provision is designed to preclude tort immunity for an individual who happens to own stock in the injured worker's corporate employer, but whose liability to the worker is unrelated to the worker's job or the tortfeasor's status as a shareholder.
Raymond designed the elevator structure and its work was not part of any joint venture with the two other defendants. Raymond acted as an independent third party and should bear liability if its work was faulty.
Further, strict liability (Art. 2317 and Art. 2322) should apply to all defendants for their clear failure to keep the elevator in good repair.
NOTES
[1] Plaintiff's original and first supplemental petitions were in products liability against Equitable Equipment Company (as manufacturer and installer of the elevator), Allen Bradley Company (as manufacturer of switches and electrical wiring used in the machine) and Shepard Niles Crane and Hoist Corporation (as manufacturer and/or installer of cables and other devices).

In a second supplemental and amending petition, however, plaintiff named Brown & Root, T.L. James and Raymond International as defendant owner-lessors of the fabrication plant and elevator.
During trial, plaintiff consented to a dismissal of his suit against Equitable, Allen Bradley and Shepard Niles Crane, and proceeded solely against Brown & Root, T.L. James and Raymond.
[2] LSA-R.S. 23:1032 Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work, which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.