634 So.2d 68 (1994)
Catherine VICKERS, Wife Of/And John S. Vickers
v.
CAJUN CONCRETE SERVICES, INC., et al.
No. 93-CA-1537.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1994.
Writ Granted June 3, 1994.
*69 T. Carey Wicker, III, Capitelli & Wicker, New Orleans, for plaintiffs-appellants.
Caleb H. Didriksen, III, Diane R. Cosenza, Didriksen & Carbo, New Orleans, for defendant-appellant.
Richard S. Vale, Blue Williams, New Orleans, for defendants-appellees.
Before BYRNES, JONES and WALTZER, JJ.
JONES, Judge.
Vickers and NOPSI appeal the trial court's judgment dismissing Sizeler pursuant to its Motion for Summary Judgment on the grounds that it was John Vickers' statutory employer. We affirm the trial court's judgment.
This civil action was brought by the appellants, John and Catherine Vickers, for personal injuries John Vickers received while delivering concrete to a construction site. We adopt the findings of fact as presented by the trial court in its reasons for judgment.
On August 16, 1990, the defendant, City of New Orleans was constructing a parking lot at 2829 Gentilly Boulevard. Defendant, Sizeler was hired as the general contractor and defendants, Cajun Concrete Services and Carlo Ditta, Inc. (Ditta) were hired as subcontractors. Plaintiff, John Vickers was employed by defendant, Ditta and his job was to deliver concrete from his truck to defendant, Cajun Concrete Services, Inc.'s pump truck. While Mr. Vickers was transferring the concrete to the pump truck, defendant Joseph Marcel moved the boom chute on the pump truck. This caused the boom to come into contact with defendant, New Orleans Public Service's (NOPSI's) overhead power lines electrocuting Mr. Vickers. As a result, Mr. Vickers has sustained grievous injuries.
On April 2, 1993, defendant, Sizeler and its insurer, Maryland Casualty Company, filed a Motion for Summary Judgement contending that it was Vickers' statutory employer and therefore immune from tort and liable solely in worker's compensation. The district court granted the Motion for Summary Judgment and cited two reasons for the holding: (1) a dual contract existed between Sizeler and Vickers; and (2) Vickers performed work essential to Sizeler's business.
It is from this judgment that NOPSI and Vickers appeal.
By its first assignment of error, NOPSI argues that the trial court erred in not characterizing Sizeler as a vendee, as opposed to a principal. NOPSI argues that the court must make a precursory finding that Sizeler is not a vendee because according to Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656 (1972) a vendee is not immune in tort to the employees of its vendor who are injured by the vendee's negligence. We disagree. The employee of a vendor may be the statutory employee of the vendee if certain facts exist. Hart v. Richardson, 272 So.2d 316 (La.1973). The principal-contractor distinction is only relevant to a determination of whether Sizeler is immune under a two-contract theory.
The two-contract theory derived from a reading of La.R.S. 23:1061 which provides in pertinent part:
When any person, in this Section referred to as the "principal", undertakes to execute any work, which is part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of *70 the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; ...
Emphasis added. The disjunctive "or" manifests an intent by the legislature that a principal is immune from tort, and liable in worker's compensation, anytime the principal contracts to do any work, irrespective of whether it is a part of the principal's regular trade, business or occupation, and then contracts with another party for the performance of the work. See: Barnhill v. American Well Service and Salvage, Inc., et al, 432 So.2d 917 (La.App. 3d Cir.1983). This theory of defense was untouched by Berry v. Holston Well Service Inc., 488 So.2d 934 (La.1986) which attempted to narrow the statutory employer doctrine.
The two-contract theory was described in footnote 3 of Berry v. Holston as follows:
The discussion throughout the remainder of this opinion does not deal with what may be called the "two-contract" statutory employer defense. La.R.S. 23:1032, 1061. In that situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the "general." See Lewis, supra (in dicta); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La. App. 5th Cir.1986); Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La.App. 5th Cir.1985); Brown v. Ebasco Services, Inc., 461 So.2d 443 (La.App. 5th Cir.1984), writ denied, in part 462 So.2d 1235 (La.1985); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1st Cir.1984); Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir.) writ denied 460 So.2d 1045 (La.1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir.) writ denied 459 So.2d 535 (La.1984); Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La.App. 3d Cir.) writ denied 449 So.2d 1356 (La.1984).
Supra at 936. See also: Legros v. Norcen Exploration, Inc., 583 So.2d 859 (La.App. 1 Cir.) writs denied 588 So.2d 101 and 109 (La.1991) for a discussion of the two-contract theory and its application subsequent to the 1989 amendment of La.R.S. 23:1061.
In the instant case, the trial court found that the relationship between Sizeler and Ditta, Vickers' employer, was a principal-contractor relationship. In its reasons for judgment the trial court wrote:
... this is a principal-contractor relationship because Sizeler exercised control over the delivery of concrete. Mr. Vickers and Ditta's other drivers did not have the freedom to simply arrive at the site, unload the concrete and leave as they pleased. Instead, these individuals played an active role in the hauling and discharging of concrete and this was integral and essential to Sizeler's business. (See the deposition testimony of Eddie Beard, Sizeler's superintendent of construction.) Mr. Vickers arrived at the construction site at 6:00 a.m. and waited in line behind the other trucks dumping concrete. Approximately ten of Ditta's trucks were at the site located on the southwest side of the parking lot. When the accident occurred around 2 p.m., the plaintiff had already delivered approximately six loads of concrete. (See the deposition of the plaintiff, John S. Vickers at p. 24-35.)
Once Mr. Vickers arrived on the construction site, his status of a delivery man quickly changed to that of an employee working hand-in-hand on a project with other subcontractors. Mr. Beard, as a construction superintendent, had control over the activities of the pump truck operator, who in turn directed the operations of Mr. Vickers. Joey Marcel, the pump truck operator told Mr. Vickers where to put his truck, when to discharge his load and instructed him on the speed of the flow and the "watering" of the concrete mix. This chain of authority represents the traditional construction site scenario where the general contractor provides a superintendent *71 who supervises the various subcontractors, who in turn supervise the various laborers working on the project.
Furthermore, as the above facts demonstrate, Mr. Vickers was providing manual labor and substantial services to Sizeler which is additional evidence that Sizeler and Ditta entered into a contract involving more than just the sale of concrete.
For these reasons, this Court concludes that the facts of this case present a principal-contractor scenario rather than a vendor-vendee scenario.
We find precedence for the trial court's holding in Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir.) writ denied 459 So.2d 535 (La.1984). This Court found that defendants were the statutory employers of Certain, an employee of Prestressed. Certain was injured while fabricating components for use in defendants two construction contracts. This Court wrote:
... Furthermore, although defendants and Prestressed may be lessor and lessee, they are additionally principal and contractor because defendants have undertaken to perform part of their trade or business of constructing bridges by contracting with their lessee to fabricate and deliver essential construction components.
Supra 453 So.2d at 296 (citations omitted). A finding that Sizeler subcontracted a portion of the work to Ditta, under its contractual obligation with the City of New Orleans, supports a finding that Sizeler was Vickers' statutory employer under a two-contract theory. We find no manifest error with the trial court's finding that Sizeler was immune from tort liability based upon this theory.
We also find no error with the trial court's finding that Vickers performed work that was part of Sizeler's trade, business or occupation. The trial court correctly applied what is known as the integral relation test in determining that Sizeler was Vickers' statutory employer.
The statutory employer doctrine was analyzed recently by the 5th Circuit in Harris v. Murphy Oil, U.S.A., Inc., 980 F.2d 991 (5th Cir.1992). The court in Harris observed that in Berry v. Holston, supra the Louisiana Supreme Court attempted to succinctly set forth a method of analysis used to determine statutory employer status. This method involved a three level analysis:
1) Focus on the scope of the contract work. Is it specialized; then as a matter of law it is not part of the principal's trade, business or occupation OR non-specialized; if non-specialized then:
2) Compare the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade business or occupation.
(a) Is the contract work routine and customary, regular and predictable, general maintenance and repair work;
(b) Is the principal capable of performing the contract work, i.e. does he have the equipment and or manpower;
(c) What is the practice in the industry relative to the contract work;
3) Determine if the principal is engaged in the work at the time of the alleged accident.
Berry became the law until 1989 when the legislature amended Section 1061. The 1989 amendment recited that the following factors are not determinative of whether work pursuant to a contract is considered part of the principal's trade, business or occupation:
1) whether the work is specialized or non-specialized;
2) whether the work is extraordinary construction or simple maintenance;
3) whether the work is usually done by contract or by the principal's direct employee;
4) whether the work is routine or unpredictable; and
5) whether the principal is capable of performing the work, i.e. has the equipment and manpower do so.
The court in Harris concluded that the 1989 amendment essentially overruled Berry and restored the integral relation test as articulated in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950). In Thibodaux v. Sun Oil Co., supra, the Supreme Court did not rely on Section 1061 in resolving the question of a principal's tort liability or immunity therefrom vis-a-vis an employee of a *72 contractor. Instead it looked to Section 6, paragraph 1 of the Worker's Compensation Statute to conclude that where the plaintiffs were performing services in connection with work which was part of the business, trade, and occupation of Sun Oil Co., or so closely related thereto, that the services became an integral part thereof.
Another 5th Circuit case, Salsbury v. Hood Industries, Inc., 982 F.2d 912 (5th Cir.1993), concluded that under the present status of the law the correct inquiry in determining whether a statutory employer relationship exists is whether the contract work was an integral part of the contractor's business. Additionally, our brethren on the Second Circuit applied the integral relation test in a recent decision Moore v. Crystal Oil Co., 626 So.2d 792 (La.App. 2d Cir.1993). This appears to be the first time a state court has used the integral relation test to determine statutory employer status since the 1989 amendment. In the context of discussing whether the 1989 amendment should be applied retroactively, this circuit, and at least one other circuit, recognized that the integral relation test is the proper method to determine a statutory employer relationship since Berry was legislatively overruled. See: Carter v. Chevron Chem. Co., 593 So.2d 942 (La.App. 4th Cir.) writ denied 596 So.2d 211 (La.1992) and Young v. Lyons Petroleum, Inc., 598 So.2d 702, 706 (La.App. 3d Cir.) writ denied 605 So.2d 1149, 1150 (La.1992).
In the instant case the trial court granted Sizeler's Motion for Summary Judgment, in part, because the work performed by Vickers was integral or essential to Sizeler's operations. We agree. The hauling of concrete is an integral part of the nature and purpose of a construction company whose business involves the building of parking lots.
For the foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED.