717 So.2d 682 (1998)
Ruth H. SCOTT, et al.
v.
PONTCHARTRAIN MATERIALS CORPORATION.
No. 98-C-1611.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 1998.
*683 Donna Bramlett Wood, Breazeals, Sachse & Wilson, L.L.P., Baton Rouge, for Relator.
Steven J. Lane, Leonard A. Davis, James C. Klick, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, and John C. Bono, APLC, Metairie, for Respondent.
Before KLEES, LOBRANO, ARMSTRONG, LANDRIEU and McKAY, JJ.
LOBRANO, Judge.
We granted certiorari to consider whether the trial court erred in denying relator's motion for summary judgment. We reverse.
Plaintiffs, Ruth Scott, Deatra Marie Scott, Pamela Scott Brown, Steven Scott, and Theresa Scott Norman, wife and major children of decedent Edgar Lee Scott, respectively, filed wrongful death and survival actions seeking damages as a result of the death of Edgar Scott, who was killed when the dump truck he was operating overturned while he was in the course and scope of his employment with defendant, NOLA Construction, Inc. ("NOLA"). Also named as a defendant was Louis Monroe, the owner of the truck and trailer. Monroe was the president and sole stockholder, of NOLA. He had leased the truck of NOLA. Plaintiffs allege that Monroe was at fault for failing to provide Edgar Scott with a reasonably safe truck.[1] NOLA and Monroe filed a motion for summary judgment, arguing that they were immune from suit as decedent's employer and as officer/stockholder of decedent's employer, respectively, pursuant to La. R.S. 23:1032 of the Louisiana Worker's Compensation Law.
On May 19, 1998, the trial court rendered judgment in favor of NOLA, but denied the motion for summary judgment as to Louis Monroe, finding there were genuine issues of material fact concerning the lease and Monroe's capacity at the time of decedent's injury and death.[2] Monroe filed the instant writ *684 application on June 15, 1998 and plaintiffs filed an opposition on July 6, 1998.

DISCUSSION
The broad issue presented is whether Monroe can be sued in tort in his capacity as owner of the truck.
Appellate courts must review summary judgments de novo. Act No. 483 of 1997 amended La. C.C. P. art 966 effective August 15, 1997, and is to be applied retroactively as well as prospectively. Perry Waller v. American Seafoods Co., 97-0302, p. 1 (La. App. 4 Cir. 10/1/97), 700 So.2d 1306, 1307, writ not considered, 97-2769 (La.1/30/98), 709 So.2d 693.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La.C.C. Pro. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. LA. C.C. P. art. 966 B. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La.C.C. P. art. 966 C(2).
Id.
Monroe claims that the exclusivity or immunity provision of La. R.S. 23:1032 bars plaintiffs from suing him in tort in his capacity as the owner of the allegedly defective truck which he leased to NOLA, because he is an officer and a stockholder of NOLA. La. R.S. 23:1032 provides, in pertinent part:
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer of principal under any dual capacity theory or doctrine.
* * * * * *
C. The immunity from civil liability provided by this Section shall not extend to: (1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; ...
The immunity provision of La. R.S. 23:1032 must be narrowly construed. Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 4 (La.12/8/94), 646 So.2d 905, 910. "Every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 346.
The dual capacity theory or doctrine cited in La. R.S. 23:1032(A)(1)(b), was discussed by the Louisiana Supreme Court in Stelly as follows: *685 Louisiana's dual capacity theory or doctrine refers to employers with multiple relationships, connections or involvement to the employee's injury and/or cause of the injury, which ordinarily would result in liability being imposed upon the employer by operation of law, in addition to the provisions of the Worker's Compensation Act. The dual capacity doctrine limits the injured employee's recovery to worker's compensation benefits, precluding the pursuit of their tort claims against their employers.
94-0569 at p. 5, 646 So.2d at 910.
Thus, "dual capacity doctrine" bars suits by employees against their employers, and those others grouped with employers, such as officers and stockholders, under a dual capacity theory. The "employer's second capacity in such a case is inextricably intertwined with his capacity as employer." Wright v. State, 93-3095, p. 4 (La.7/5/94), 639 So.2d 258, 260. The employer in such a case "occupie[s] dual roles with dual responsibilities toward the employee at the time of the work-related accident." Id. at p. 5.
The limiting language of La. R.S. 23:1032(C)(1) refers to the normal course and scope of the officer/stockholder's employment vis-a-vis the business of the employer. Burton v. Berthelot, 567 So.2d 649 (La.App. 4 Cir.1990), 569 So.2d 989 (La.1990); Certain v. Equitable Equipment Co., 453 So.2d 292, 297 (La.App. 4 Cir.1984), writ denied, 459 So.2d 535 (La.1984). That is, for the immunity to apply to the officer/stockholder, he must have been engaged at the time of the injury in the normal course and scope of the employer's business. Although plaintiffs are suing Monroe for a defective product, the truck, products liability actions are not exempt from the provisions of the worker's compensation statute. Deagracias v. Chandler, 551 So.2d 25, 26 (La.App. 4 Cir.1989). The immunity provision supplied by La. R.S. 23:1032 applies to strict liability actions pursuant to La. C.C. art. 2317. Certain, 453 So.2d at 298.
In support of his motion for summary judgment, Monroe submitted, among other evidence, his September 1996 deposition, wherein he stated that he was a general contractor operating as NOLA Construction Company, a corporation of which he was the president and sole stockholder. Monroe said he was the sole stockholder when the corporation was formed ten years prior to his deposition. Monroe said he was a salaried employee of NOLA, and classified his position as a supervisor. Monroe identified a copy of the 1995 license for a trailer, with Monroe's name listed in a space provided for "name of lessee or in care of," and a copy of the registration certificate for a Ford private truck, listing Monroe as owner. Monroe's deposition testimony indicated that these documents were for the truck and trailer involved in the accident, and that he owned both. Monroe identified a lease agreement, which he said encompassed the lease from him to NOLA of a variety of equipment which he owned, including the truck and trailer or dump truck which plaintiffs' decedent was operating at the time of the accident. The lease states that a description of the leased equipment is attached to the lease as exhibit "A." However, the lease attached to Monroe's writ application, which presumably was attached to his deposition introduced in support of his motion for summary judgment, does not have this attachment. The lease covered the period from June 18, 1991 to June 18, 2001. Monroe stated that he did not purchase the truck until 1992 or the latter part of 1993, and said he purchased the trailer "in that neighborhood of time." However, he said the lease covered the truck and trailer.
The lease was signed by Monroe in his individual capacity, and by him on behalf of NOLA. Although the lease provided that NOLA pay Monroe $500.00 per month, Monroe indicated he was not receiving the payments because he owed NOLA money, i.e., that he set off his debts to NOLA by not collecting his payments under the lease. However, he said he was being paid a salary as a supervisor for NOLA and received a W-2 form from NOLA. Monroe said any repairs on the truck would have been done by NOLA, i.e., by himself or a mechanic employed by NOLA. All three documents referred *686 to above were attached to Monroe's deposition.[3]
Through Monroe's deposition, he made a prima facie showing that he owned the truck and trailer involved in the accident; that he was an officer and sole shareholder of NOLA; and that he was also a supervisor at NOLA drawing a salary. While Monroe did not state that he was a supervisor at the time of the accident, his deposition testimony inferred that he was regularly employed by NOLA as a supervisor both at the time of his deposition and at time of the accident.
As to the lease, because the copy presented to this court does not contain exhibit "A," which lists the items covered by the lease, and Monroe testified that he purchased the truck and trailer after the inception of the lease, there is a question as to whether the lease covered the truck and trailer. However, a lease can be by verbal contract. La. C.C. art. 2683. Monroe testified by deposition that he leased the truck and trailer to NOLA. Therefore, we are satisfied that there is no genuine issue of fact in this regard. Plaintiffs claim there are genuine issues of material fact as to the terms and rights of Monroe and the responsibilities in the lease. However, the lease contract speaks for itself insofar as those issues are concerned. There is nothing complicated about the lease arrangementMonroe owned equipment and leased it to his corporation.
Plaintiffs also claim there is a genuine issue of material fact as to whether Monroe was in the course and scope of his employment with NOLA when Mr. Scott was injured, because Monroe said he was out of town at the time of the accident. However, the mere fact that Monroe was out of town on the day of the accident does not mean that he was not engaged at the time of the injury in course and scope of his employment with NOLA within the meaning of La. R.S. 23:1032(C)(1). That provision means whether or not the officer or stockholder is regularly engaged in such employment. See, Certain, supra. It is undisputed that Monroe worked for NOLA in a supervisory capacity. It would be unreasonable to say that his employment ceases, or that he was not engaged in his employment merely because he takes a day off from work or goes on vacation.
Plaintiffs also claim there is a genuine issue of material fact as to whether the truck and trailer had structural defects at the time of the accident. This is not relevant to the issue of whether Monroe enjoys immunity under La. R.S. 23:1032. Plaintiffs also claim there is a genuine issue of material fact as to whether Monroe had garde of the truck and trailer at the time of the accident. Even assuming this fact is relevant to the issue of immunity under La. R.S. 23:1032, it is undisputed that Edgar Scott was employed by NOLA and that he was operating the truck and trailer at the time of his accident. Monroe has made a prima facie case that he leased the truck to NOLA, and that any contact Monroe had with the vehicle after that was as a supervisor for NOLA and/or mechanic. There is no indication that Monroe used or worked on the truck and trailer in his individual capacity. There is no genuine issue of material fact as to who had garde-NOLA did.
In Hebert v. Allied Signal, Inc., 577 So.2d 1117 (La.App. 1 Cir.1991), the facts were very similar to those presented by the instant case. Mercer was a major stockholder and president of Gary Mercer Construction Services, Inc., and also performed duties as administrator and manager of Mercer Construction on a daily basis. Mercer owned a truck in his individual capacity, which he leased to Mercer Construction. Plaintiff was injured in the course and scope of his employment with Mercer Construction while inflating a tire on the truck. Plaintiff and his wife filed suit against Mercer in his individual capacity. Mercer filed a motion for summary judgment, claiming immunity under La. R.S. 23:1032. Plaintiffs claimed Mercer was liable as owner of the truck under a dual *687 capacity theory. The trial court granted summary judgment in favor of Mercer, and the appellate court affirmed that judgment.
Plaintiffs claim that they are not seeking to hold Monroe liable under a dual capacity theory or doctrine, but as a third party, independent of his connection with NOLA. However, the employer and officers, directors, stockholders, and partners of such employer are all interchangeable for purposes of the immunity, with the stipulation that the latter have to be engaged in the course and scope of the employer's business at the time of the injury. This view is implied in Hebert, and the facts of the instant case are virtually identical to those in Hebert. Relying on Hebert, Monroe is immune from suit in tort.
While the facts presented by Monroe may not be quite as strong as in Hebert, Monroe has made, at least, a prima facie showing that he is entitled to the immunity afforded by La. R.S. 23:1032, and, that there is an absence of factual support for one or more elements essential to plaintiffs claim. Pursuant to La. C.C.P. art. 966(C)(2), in the face of this showing by Monroe, plaintiffs had to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. Id. Plaintiffs have failed to do so. Accordingly, there is no genuine issue of material fact, and relators are entitled to judgment as a matter of law. The trial court judgment is reversed. Relator's motion for summary judgment is granted.
REVERSED AND RENDERED.
ARMSTRONG, J., dissents.
NOTES
[1] Also named as defendants were Pontchartrain Materials Corporation and its insurer, Travelers Insurance Company. Pontchartrain and Travelers were not a party to the motion for summary judgment, and the claims against them are not at issue in this writ application.
[2] General Agents Insurance Company of America, Inc., which was apparently added as a defendant by supplemental and amending petition, was a party to the motion for summary judgment. The trial court deferred ruling on the motion insofar as it pertained to General.
[3] Attached to Monroe's writ application is a copy of the articles of incorporation for NOLA. These articles were not available at the time of the deposition, and so were not attached to it. It is unclear whether a copy of the articles was introduced in support of the motion for summary judgment. Nevertheless, Monroe's deposition testimony is sufficient to make out a prima facie case that he is an officer and stockholder of NOLA.